### (WIN) WASHINGTON INITIATIVES NOW, Plaintiff–Appellant,

v.

Vicki **RIPPIE**,[1] as Executive Director of the Washington Public Disclosure Commission in her official Capacity, Melissa Warheit, in her official Capacity, Defendants–Appellees.

No. 98–35412.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 2000

Filed May 25, 2000

---

1. Pursuant to Fed. R.App. P. 43(c)(2), Vicki Rippie is substituted for Melissa Warheit, her predecessor, as Executive Director of the Washington State Public Disclosure Commission. Warheit remains as an appellee, however, in her individual capacity.

Shawn Timothy Newman, Olympia, Washington, for the plaintiff-appellant.

Jean Wilkinson, Assistant Attorney General, Olympia, Washington, for the defendant-appellee.

Before: REINHARDT, THOMPSON, and T. G. NELSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

■ Washington Revised Code § 42.17.090(1)(g) (1993) requires the disclosure of the names and addresses of persons paid to collect signatures on initiative petitions "to the people," and the amounts paid to them. We conclude these requirements chill political speech protected by the First Amendment, and do not significantly advance any substantial state interest. Accordingly, we hold the statute, and the regulations promulgated under it, are unconstitutional.[2]

## I.

The State of Washington allows its citizens to make laws directly through an initiative process. *See* Wash. Const. Art. II, § 1. There are two kinds of initiatives in Washington: "initiatives to the people," and "initiatives to the legislature." *Id.* A successful petition for an initiative to the people results in the measure being placed on the ballot at the next general election. *Id.* A successful petition for an initiative to the legislature certifies the proposed law to the legislature for further action. *Id.*

To qualify an initiative, one or more voters may draft a proposed law, file it with the Secretary of State, and then circulate petitions to collect signatures. *See id.* If an initiative sponsor pays circulators to collect signatures for an initiative to the people, the sponsor must disclose the names and addresses of its paid circulators as well as the amounts paid to each. Wash. Rev.Code § 42.17.090(1)(g); Wash. Admin. Code § 39–16–044. Washington does not require disclosure of the names or addresses of, or amounts paid to, circu-

lators who circulate petitions for initiatives to the legislature. In this opinion, therefore, we use terms such as "paid circulators" and "initiative petitions" to refer only to initiatives to the people.

In 1972, Washington voters passed Initiative Measure 276. The measure sought to promote "public confidence in government at all levels ... by assuring the people of the impartiality and honesty of the officials in all public transactions and decisions" through a system of compelled disclosure. Wash. Laws of 1972, Ch. 1. Political committees, whether they sponsor candidates or ballot measures, must file a series of financial reports with the Public Disclosure Commission ("the PDC"), both before and after an election. Wash. Rev. Code § 42.17.080(2). The required content of these reports is set forth in Washington Revised Code § 42.17.090. Entities subject to disclosure must report not only their assets and liabilities, but also a broad range of other financial information. For example, political committees must disclose the identities of their donors and the amounts received from each. Wash. Rev. Code § 42.17.090(1)(b). They must also disclose the names and addresses of every person to whom certain expenditures have been made as well as the amount, date, and purpose of the expenditures. Wash. Rev.Code § 42.17.090(1)(f).

In 1993, the legislature modified Washington Revised Code § 42.17.090 to add a new section (1)(g) to protect "the integrity of the initiative and referendum process." Laws of 1993, Ch. 256. Pursuant to § 42.17.090(1)(g), political committees must disclose:

---

**2.** There is no longer any dispute that requiring disclosure of amounts paid to initiative circulators is unconstitutional. The Supreme Court in *Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), resolved that issue, holding that such a requirement violates the First Amendment. *Id.* at 204, 119 S.Ct. 636. In this appeal, the State does not contend otherwise. We confine our discussion, therefore,

to the State's requirement that paid circulators must disclose their names and addresses. We do not reach the question of severability of the statute, because even if the statute were severable, and the requirement to disclose amounts paid to circulators were stricken, the statute would still be unconstitutional because of its requirement that the names and addresses of paid circulators must be disclosed.

[t]he name and address of each person to whom any expenditure was made directly or indirectly to compensate the person for soliciting or procuring signatures on an initiative or referendum petition, the amount of such compensation to each such person, and the total of the expenditures made for this purpose.

Wash. Rev.Code § 42.17.090(1)(g); *see also* Wash. Admin. Code § 390–16–044.[3]

Thus, pursuant to § 42.17.090(1)(g), a political committee that uses paid circulators must disclose the circulators' names, addresses, and the amount of compensation paid to each of them. Such disclosure is required both in financial reports filed before the election and in a final report after the election. In practice, political committees typically file their initial reports in May and June, before the circulation period ends, and their final reports in July and August.

Appellant Washington Initiatives Now! ("WIN") serves as a consultant to political committees that wish to place initiatives on the ballot. WIN helps these organizations by collecting signatures on their behalf. To accomplish this task, WIN hires individuals to gather signatures and pays them, on a per signature basis, for every signature they collect.

On July 9, 1997, WIN filed suit in the United States District Court for the Western District of Washington. WIN sought a declaration that § 42.17.090(1)(g) and the regulations promulgated under it were unconstitutional, because they chilled the First Amendment political speech rights of paid circulators and failed to advance any substantial governmental interest. WIN alleged that the statute and regulations also violated paid solicitors' Fourteenth Amendment rights to equal protection of the law, because the statute and regulations improperly distinguished paid solicitors from volunteer solicitors, who are not subject to the disclosure requirement. WIN also sought, pursuant to 42 U.S.C. § 1983, "punitive damages, attorneys fees, costs and expenses" from Melissa Warheit, former Executive Director of the PDC. WIN alleged its declaratory relief claim against Warheit in her official capacity; it alleged its § 1983 claim against her in her individual capacity.

In response to WIN's complaint, Warheit filed a motion to dismiss. She asserted that WIN failed to allege facts on which relief could be granted under either the declaratory relief or § 1983 claim. *See* Fed.R.Civ.P. 12(b)(6). The district court granted Warheit's motion in part and denied it in part. With regard to the declaratory relief claim, the district court determined that WIN had sufficiently alleged the unconstitutionality of § 42.17.090(1)(g), and had properly named former Executive Director Warheit, in her official capacity, as a defendant. With regard to WIN's § 1983 claim, however, the district court dismissed that claim, because WIN failed to allege how Warheit, in her individual capacity, had deprived anyone of any rights, privileges, or immunities secured by the Constitution or the laws of the United States; and, in the alternative, she was entitled to qualified immunity.

WIN and the State then filed cross-motions for summary judgment on the declaratory relief claim. The evidence offered in support of WIN's motion established that some circulators were reluctant

---

**3.** Washington Administrative Code § 390–16–044(1) provides:

A political committee making expenditures for the purpose of soliciting or procuring signatures on petitions to place an initiative or referendum on a statewide ballot shall report the total expenditures for the reporting period on Schedule A to Form C–4. An attachment to the Schedule A shall include, per RCW 42.17.090(1)(g)(1)(g), the name, address, and amount paid to each person for the services, and the date of each payment. (2) When the expenditure in (1) is to a person who employs others to secure signatures, the information on the attachment to Schedule A shall be supplemented with such additional attachments as may be necessary to detail the name and address of each and every other person paid, the amount paid to each, and the date of each payment.

to have their names and addresses reported pursuant to § 42.17.090(1)(g). One professional signature gatherer, Bruce Ducharme, described how, on three occasions, people threatened him while he was collecting signatures because they disagreed with the positions he was advocating. Sherry Bockwinkel, WIN's manager, stated that she had observed circulators being harassed while collecting signatures. One professional circulator had stopped circulating initiative petitions altogether because of the disclosure requirements of § 42.17.090(1)(g). WIN contends this evidence establishes that paid petition circulators justifiably fear that publishing their names and addresses pursuant to § 42.17.090(1)(g) will allow people to intensify their abuse by harassing the circulators at home.

In response, and in support of its own motion, Washington produced evidence to show that in fact petition circulators freely disclose their names and addresses. Seven political committees used professional signature gatherers in 1996 and 1997, after § 42.17.090(1)(g) came into effect, and successfully qualified their initiatives. Washington contends that this evidence establishes that paid circulators, including Ducharme, have successfully, and safely, complied with the disclosure requirements.

Washington also asserts that disclosure of the names and addresses of paid circulators furthers the State's interests in combating fraud and providing voters with information about the electoral process. The State presented evidence of two major cases of fraud committed by paid petition circulators since the enactment of § 42.17.090(1)(g). In 1994, two signature gatherers admitted forging approximately 480 signatures in one signature drive. These individuals subsequently pleaded guilty to fraudulently signing petitions, in violation of Washington Revised Code § 29.79.440. In addition, in 1995, a signature gatherer who had worked for WIN pleaded guilty to forging signatures on several petitions. WIN presented uncontroverted evidence, however, that in neither incident did the State rely on information disclosed pursuant to § 42.17.090(1)(g). In the 1994 case, disclosure was not required, because the circulators sought to qualify an initiative to the legislature, not an initiative to the people. In the 1995 case, WIN itself provided the authorities with the relevant information.

In granting the State's motion for summary judgment, the district court relied on *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (hereafter *Buckley v. Valeo*). The district court compared the disclosure requirements of Washington's § 42.17.090(1)(g) with those under the Federal Election Campaign Act of 1971 and related provisions of the Internal Revenue Code of 1954 (both as amended in 1974), which statutes were at issue in *Buckley v. Valeo*. The district court concluded that, as in *Buckley v. Valeo*, the disclosure required by Washington's § 42.17.090(1)(g) furthered important governmental interests sufficiently to outweigh the burden it placed on First Amendment rights. The district court also determined that the statute and regulations did not violate the Fourteenth Amendment.

After the district court entered judgment in favor of the State, the Supreme Court decided *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (hereafter *"Buckley"*). In *Buckley*, the Court invalidated a number of Colorado laws that regulated initiative petition circulation, including a disclosure requirement similar to the one we consider here. *Id.* at 186–87, 119 S.Ct. 636. Although the Court acknowledged that "[s]tates allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally," *id.* at 191–92, 119 S.Ct. 636, it reiterated that petition circulation is "core political speech" which involves "interactive communication concerning political change." *Id.* at 186, 119 S.Ct. 636 (quoting *Meyer v. Grant*, 486 U.S. 414, 422, 108 S.Ct. 1886,

100 L.Ed.2d 425 (1988)). As such, Colorado's disclosure requirement was subject to "exacting scrutiny." *Id.* at 204, 119 S.Ct. 636. Colorado had not established that its regulatory scheme actually furthered any substantial state interest sufficient to outweigh the burden imposed upon political speech; accordingly, the Colorado disclosure requirement was unconstitutional. *Id.*

Although, in *Buckley*, the Court struck down Colorado's requirement of the disclosure of the names and addresses of paid circulators, and the disclosure of the amounts paid to them, it approved of a requirement that all circulators, paid and volunteer, had to complete an affidavit that mandated disclosure of their names and addresses.[4] *See id.* at 198–99, 119 S.Ct. 636. The Court determined that even though the affidavit requirement "reveal[ed] the names of the petition circulator and is a public record," the State employed adequate safeguards to protect the interests of petition circulators such that disclosure did not unduly burden individual rights. *Id.* In reaching this decision, the Court explained that courts must balance the hardship imposed on petition circulators against the interests asserted by the state. *Id.* The Court emphasized that in considering a state's interests, a court should scrutinize the strength of those interests and whether they outweigh the

First Amendment rights they burden. *See id.*

### II.

■ The parties agree that the only issues before us are issues of law that we review de novo. *See Farr v. U.S. West Communications, Inc.,* 151 F.3d 908, 913 (9th Cir.1998). Having reviewed those issues, we conclude that Washington Revised Code § 42.17.090(1)(g), and the State's regulations promulgated thereunder, which require disclosure of the names and addresses of paid circulators, are unconstitutional.

There can be no doubt that the compelled disclosure of this information chills political speech. *See American Constitutional Law Foundation v. Meyer,* 120 F.3d 1092, 1105 (10th Cir.1997); *see also McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 356, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). As the Supreme Court has explained:

> Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society. The right to remain anonymous may be abused when it shields fraudulent conduct. But political speech by its

---

4. Colorado Revised Code § 1–40–111(2) provides:

> To each petition section shall be attached a signed, notarized, and dated affidavit executed by the registered elector who circulated the petition section, which shall include his or her printed name, the address at which he or she resides, including the street name and number, the city or town, the county, and the date he or she signed the affidavit; that he or she has read and understands the laws governing the circulation of petitions; that he or she was a registered elector at the time the section of the petition was circulated and signed by the listed electors; that he or she circulated the section of the petition; that each signature thereon was affixed in the circulator's presence; that each signature thereon is

> the signature of the person whose name it purports to be; that to the best of the circulator's knowledge and belief each of the persons signing the petition section was, at the time of signing, a registered elector; and that he or she has not paid or will not in the future pay and that he or she believes that no other person has paid or will pay, directly or indirectly, any money or other thing of value to any signer for the purpose of inducing or causing such signer to affix his or her signature to the petition. The secretary of state shall not accept for filing any section of a petition that does not have attached thereto the notarized affidavit required by this section. Any signature added to a petition after the affidavit has been executed shall be invalid.

nature will sometimes have unpalatable consequences, and, in general, our society accords greater weight to the value of free speech than to the dangers of its misuse.

*McIntyre,* 514 U.S. at 356, 115 S.Ct. 1511 (internal citation omitted). Depriving individuals of this anonymity is, therefore, "a broad intrusion, discouraging truthful, accurate speech by those unwilling to [disclose their identities] and applying regardless of the character or strength of an individual's interest in anonymity." *American Constitutional Law Found.,* 120 F.3d at 1103.

The State attempts to distinguish the present case. It argues that § 42.17.090(1)(g)'s requirement of disclosure of the names and addresses of paid circulators, does not—and cannot—facilitate the harassment of petition circulators, because the law does not require disclosure until after the circulators are paid, which the State asserts does not typically occur until after the circulation period has ended. At that point, the State argues, any animosity toward circulators would likely have dissipated to the point that no one would be inclined to use the disclosed information to harass individual petition circulators; and, the State points out, no one has reported being harassed as a result of the disclosure requirement.

Evidence presented to the district court, however, illustrates that § 42.17.090(1)(g) reports are routinely filed during the circulation period, when hostility toward petition circulators is at its highest. Moreover, the State's focus on whether the disclosure requirement has led to the harassment of petition circulators is misleading. WIN offered unrebutted evidence that the disclosure requirement deters the free exercise of constitutional

rights and that it has discouraged would-be petition circulators from engaging in that activity.[5] One circulator stated that, because of the requirement, he was reluctant to solicit signatures on initiative petitions. Another had ceased soliciting signatures altogether. Indeed, it is precisely the risk that people will refrain from advocating controversial positions that makes a disclosure scheme of this kind especially pernicious. Even when it does not have the effect of facilitating harassment, the disclosure requirement chills speech by inclining individuals toward silence.

■ We conclude Washington Revised Code § 42.17.090(1)(g) imposes a significant burden on the right of political speech protected by the First Amendment. This does not end the case, however. Consistent with *Buckley,* we must balance this burden against Washington's interests in combating fraud and providing voters with useful information about the electoral process. *See Buckley,* 525 U.S. at 192, 119 S.Ct. 636.

■ In *Buckley,* the Supreme Court reiterated that "the First Amendment requires us to be vigilant ... to guard against undue hindrances to political conversations and the exchange of ideas." *Buckley,* 525 U.S. at 191, 119 S.Ct. 636. The Court then followed its analysis in *Meyer v. Grant,* 486 U.S. 414, 419, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), to reach the same result it had in that case. *Meyer* applied an "exacting scrutiny" standard to invalidate a prohibition against paying petition circulators. Applying that standard to this case, Washington must show that its interests in combating fraud and providing electoral information are substantial, that those interests are furthered by the disclosure requirement, and that those interests outweigh the First

---

**5.** The State suggests petition circulators are not, in fact, reluctant to disclose their names and addresses under § 42.17.090(1)(g). It points out that WIN itself requires its signature gatherers to identify themselves on the petitions they circulate by signing, or at least initialing, their completed petitions in order to be paid. Because these petitions become public records and can be reviewed by any citizen upon request, the State contends that petition circulators freely disclose their identities. This evidence is unavailing. WIN does not require petitioners to identify themselves by name and does not require them to disclose their addresses.

Amendment burden the disclosure requirement imposes on political speech.

The State's interest in combating fraud weighs minimally in the balance. As the Supreme Court explained in *Buckley*, "ballot initiatives do not involve the risk of 'quid pro quo' corruption present when money is paid to, or for, candidates." *Id.* at 203, 119 S.Ct. 636. Moreover, "[t]he risk of fraud or corruption, or the appearance thereof, is more remote at the petition stage of an initiative than at the time of balloting." *Id.* (quoting *Meyer*, 486 U.S. at 427–28, 108 S.Ct. 1886); *see also First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 790, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ("The risk of corruption perceived in cases involving candidate elections ... simply is not present in a popular vote on a public issue.")

Even if Washington's interest in fraud detection were substantial, the required disclosure of names and addresses of paid circulators does not further that interest. Disclosure of a circulator's name and address will not establish whether signatures on a petition he submits are forged. Moreover, prosecutions under § 42.17.090(1)(g) have been sparse. Since the statute was enacted in 1993, the State has detected fraud in only two initiative campaigns. In neither case did § 42.17.090(1)(g) play any role in discovery or prosecution. In each instance, the State simply relied on its traditional methods of detecting and prosecuting forgeries. *See, e.g.,* Wash. Rev.Code §§ 29.79.440 (prohibiting voters from forging signatures on initiatives and signing more than one petition); 9.44.080 (making a misdemeanor any forgery not covered under §§ 29.79.440, 29.79.490, 29.82.170 or 29.82.220); *see also* Wash. Rev.Code § 29.79.490 (making it a misdemeanor to sign or decline to sign an initiative or referendum for consideration or a promise of consideration, or to pay or promise to pay a voter to sign or decline to sign an

initiative or referendum). In any event, the Supreme Court has expressly rejected the notion that "occasional fraud ... involving paid circulators" justifies targeting paid petitioners for special enforcement. *Buckley*, 525 U.S. at 204 n. 23, 119 S.Ct. 636 (internal quotation marks omitted). As the Court reasoned, volunteer petition circulators, who are not subject to the disclosure requirement, may be just as likely as paid petition circulators to commit fraud.

The State's interest in disclosing campaign finance information to voters is also insufficient to override the First Amendment burden imposed by § 42.17.090(1)(g). Although Washington has expressed its interest in full disclosure as a means to educate voters and promote confidence in government, *see* Wash. Rev.Code § 42.17.010(11), there is no logical explanation of how a voter who signs an initiative petition would be educated in any meaningful way by learning the circulator's name or address, *see Buckley v. Valeo*, 424 U.S. at 67, 96 S.Ct. 612; nor how that disclosure would assist a voter in judging the credibility of individual petition circulators. *See Buckley*, 525 U.S. at 203 n. 22, 119 S.Ct. 636.

The State's interest in educating voters through campaign finance disclosure is more adequately served by a panoply of the State's other requirements that have not been challenged. Through Washington Revised Code § 42.17.090(1)(b), "voters are informed of the source and amount of money spent by proponents to get a measure on the ballot; in other words, voters [can learn] who has proposed a measure and who has provided funds for its circulation." *Buckley*, 525 U.S. at 203, 119 S.Ct. 636 (citations omitted). Even without § 42.17.090(1)(g), voters can learn both whether a particular political committee has spent funds to solicit signatures and how much it has spent. *See* Wash. Rev.Code § 42.17.090(1)(f).[6]

---

**6.** This statute was not challenged in the district court and is not before us on appeal. However, the record suggests that the effect of § 42.17.090(1)(f) is to require only that

proponents of initiatives disclose how much money they have paid to organizations like WIN, and does not require WIN to disclose

We conclude the State's asserted interests in fraud detection and in educating voters through campaign finance disclosure do not justify the required disclosure of the names and addresses of paid circulators. In reaching this conclusion, we are mindful of the State's argument that because it does not have Colorado's affidavit requirement it lacks any means, other than the disclosure required by § 42.17.090(1)(g), to learn the identities of paid circulators and where they live. This argument is unavailing. The Supreme Court invalidated Colorado's compelled disclosure requirement not because it was redundant to the affidavit requirement, but because "[l]isting paid circulators and their income from circulation forces paid circulators to surrender the anonymity enjoyed by their volunteer counterparts" without advancing the asserted state interests. *Buckley,* 525 U.S. at 204, 119 S.Ct. 636. Wareheit cannot defend against WIN's First Amendment challenge by pointing to conceivably permissible regulations that the state of Washington chose not to adopt. Rather, such regulations, if permissible, demonstrate only that the state had available legitimate means by which it could have dealt with the perceived problems regarding the initiative process.

Consistent with the Court's holding in *Buckley,* we conclude that Washington's disclosure requirement which targets paid circulators fails the exacting scrutiny described in *Buckley,* and is unconstitutional.

### III.

■ WIN also appeals the dismissal of its § 1983 claim against Warheit in her individual capacity. The district court ruled in the alternative that Warheit was entitled to qualified immunity on this claim. WIN does not challenge this ruling on appeal, a ruling which we believe to be undoubtedly correct. The constitutional status of the statute was not clear, at least prior to the Supreme Court's decision in

how much it pays to individual circulators, who those circulators are, and where they

*Buckley,* 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). Because we affirm the district court's decision on the basis of qualified immunity, we need not consider its ruling that Warheit was not subject to suit in her individual capacity for official acts, under *Hafer v. Melo,* 502 U.S. 21, 28, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) and *Ashker v. California Dep't of Corrections,* 112 F.3d 392, 395 (9th Cir.1997).

### CONCLUSION

We AFFIRM the district court's dismissal of WIN's § 1983 claim. We REVERSE the district court's grant of summary judgment in favor of the State on WIN's declaratory relief claim, and GRANT WIN's motion for summary judgment. Washington Revised Code § 42.17.090(1)(g), and the State's regulations promulgated thereunder, violate the First Amendment. We remand the case to the district court for entry of judgment in favor of WIN on its declaratory relief claim. Each side shall bear its own costs and fees.

AFFIRMED in part and REVERSED in part.