319 F.3d 483
 Alan PORTER; Patrick Kerr; Steven Lewis; Scott W. Tenley; William J. Davis; Democratic Law Students Association at UCLA, Plaintiffs-Appellants,
v.
Bill JONES, Secretary of State, Defendant-Appellee.
Alan Porter; Patrick Kerr; Steven Lewis; Scott W. Tenley; William J. Davis; Democratic Law Students Association at UCLA, Plaintiffs-Appellants,
v.
Bill Jones, Secretary of State, Defendant-Appellee.
 No. 01-55585.
 No. 01-56480.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 2002.
 Filed February 6, 2003.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Peter J. Eliasberg and Mark D. Rosenbaum, ACLU Foundation of Southern California, Los Angeles, California; Lisa Danetz, National Voting Rights Institute, Boston, Massachusetts, for the plaintiffs-appellants.
 Leslie R. Lopez, Deputy Attorney General of the State of California, Sacramento, California, for the defendant-appellee.
 Appeal from the United States District Court for the Central District of California; Robert J. Kelleher, Senior District Judge, Presiding. D.C. No. CV-00-11700-RJK.
 Before LAY,* CANBY, Jr. and PAEZ, Circuit Judges.
 OPINION
 PAEZ, Circuit Judge.
 
 
 1
 In the weeks preceding the closely contested presidential elections of 2000, a number of Internet websites were created that facilitated discussions among voters regarding potential strategic ways of voting. Through these discussions, the participants could agree to informally "swap" their votes, generating additional votes for the Democratic candidate in crucial swing states while allowing the third party candidate to garner enough votes to become eligible for federal financing in future elections. Plaintiffs, the creator and users of one such website, brought suit alleging violations of the First Amendment after Defendant Bill Jones ("Jones"), then Secretary of State for California, sent a cease and desist letter to the operators of a similar website in which he threatened to prosecute them under California Elections Code sections 18521 and 18522 for brokering the exchange of votes. Plaintiffs appeal the district court's order staying their claims for declaratory and injunctive relief under the abstention doctrine established in Railroad Commission v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and dismissing their claims for damages under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to conform to heightened pleading rules.
 
 
 2
 We agree with the district court that Plaintiffs' First Amendment and other claims are justiciable and are not barred by the Eleventh Amendment, but we reverse the district court's ruling staying Plaintiffs' claims under Pullman. It is rarely appropriate for a federal court to abstain under Pullman in a First Amendment case, because there is a risk in First Amendment cases that the delay that results from abstention will itself chill the exercise of the rights that the plaintiffs seek to protect by suit. We conclude that the risk of this kind of First Amendment chill is present here, notwithstanding the fact that Plaintiffs' challenge to the threatened application of Elections Code sections 18521 and 18522 is an as-applied challenge. Because the factors required for Pullman abstention were not met in this case, the district court had no discretion to abstain.
 
 
 3
 We also hold that the district court erred in dismissing Plaintiffs' claims for damages for failure to meet the heightened pleading standard that we established in Branch v. Tunnell, 937 F.2d 1382, 1386 (9th Cir.1991). In our recent decision in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir.2002), we held that Branch v. Tunnell's heightened pleading standard did not survive the Supreme Court's decision in Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Accordingly, we reverse the dismissal of the damages claims and remand for consideration of the merits.
 
 I.
 BACKGROUND
 
 4
 On October 23, 2000, in anticipation of the November 2000 national presidential election, Plaintiff Alan Porter ("Porter") created a website called "votexchange2000.com" ("Porter's website"). In addition to offering general information about the electoral college, election predictions, and voting, Porter's website provided "a forum to allow individuals around the country to contact one another and discuss their political beliefs and strategies for the upcoming election."
 
 
 5
 As described in the amended complaint, Porter's website contained:
 
 
 6
 a questionnaire Page designed to facilitate the exchange of [] information [about voting intentions] by creating a database of e-mail addresses of interested voters.... The program would inform voters about whether their states were considered `safe' or `swing.' The website then invited visitors who wished to contact compatible voters to enter their e-mail addresses.... A software program matched up citizens with complementary preferences and sent out e-mail addresses to each party. From there on, further discussion or action by any two voters matched by the votexchange2000 software was conducted directly between those parties on an entirely voluntary basis.
 
 
 7
 On October 30, 2000, Defendant Jones, the Secretary of State of California, sent a cease and desist letter to the founders of a website called "voteswap2000.com," threatening criminal prosecution under Elections Code sections 18521[1] and 18522[2] for allegedly brokering the exchange of votes. This letter also stated, "Any person or entity that tries to exchange votes or brokers the exchange of votes will be pursued with the utmost vigor." On that same day, Jones sent similar correspondence, with similar threats of prosecution, to Yahoo! Inc. and Register.com. These threats were reported in local and national newspapers.
 
 
 8
 The creators of voteswap2000.com posted a notice on their website regarding these threats and discontinued those activities deemed potentially illegal. Although Jones received complaints regarding other election-related websites, such as NaderTrader.com, virtualvotesforNader.com, and winwincampaign.org, Jones did not send cease and desist letters to the owners of these websites, because he determined that they did not broker the exchange of votes in violation of Elections Code sections 18521 and 18522.
 
 
 9
 Porter promptly learned of the cease and desist letter, and that voteswap2000.com "had shut itself down under threat of prosecution." Because Porter was "deeply afraid" of being prosecuted, he suspended the operation of his website, although he never received a cease and desist letter. On November 2, 2000, Porter, along with Patrick Kerr, Steven Lewis, Scott Tenley, William J. Davis, and the Democratic Law Students Association at the University of California, Los Angeles (collectively "Plaintiffs"), filed suit against Jones.[3] Plaintiffs alleged in their complaint that Jones's actions denied them freedom of speech and association in violation of the First Amendment and 42 U.S.C. § 1983, and requested declaratory and injunctive relief. They applied for a temporary restraining order enjoining Jones from taking any "enforcement action against Plaintiffs for any expressive activities in connection with the November 7, 2000 presidential election, including expression conducted on web sites," but the district court denied Plaintiffs' application the day before the election.
 
 
 10
 Subsequently, Plaintiffs amended their complaint, alleging that Porter intended to operate a website similar to his first one in the 2004 presidential election, and suing Jones in his individual capacity for damages and in his official capacity for a permanent injunction restraining him "from prosecuting, threatening to prosecute, or taking any enforcement action against Plaintiffs, and others similarly situated, for any expressive activities described herein in connection with the November 7, 2000 presidential election as well as any future presidential election, including expression conducted on web sites." Plaintiffs also added claims under the California Constitution and, in addition, § 1983 claims alleging violations of the Fourteenth Amendment and the Commerce Clause.
 
 
 11
 Jones responded by filing a motion to dismiss, challenging Plaintiffs' claims on the basis of standing, mootness, and ripeness. In the alternative, Jones argued that the district court should stay the case under the Pullman abstention doctrine. As noted, the district court dismissed Plaintiffs' damages claims for failure to satisfy the heightened pleading standards that we established in Branch v. Tunnell, 937 F.2d at 1386. The district court stayed all other claims, concluding that Plaintiffs had standing and their claims were not moot, but abstaining under Pullman. Plaintiffs timely appealed the district court's abstention order and judgment dismissing their claims for damages.
 
 II.
 JURISDICTION
 
 12
 The district court's decision to abstain under Pullman is immediately appealable under 28 U.S.C. §§ 1291 and 1292(a)(1). Confederated Salish v. Simonich, 29 F.3d 1398, 1407 (9th Cir.1994). Plaintiffs' damages claims are also immediately appealable because the district court entered judgment on them under Rule 54(b). Because Plaintiffs appeal the district court's dismissal for failure to state a claim, Plaintiffs' allegations are taken as true. See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir.2000). In debating the propriety of abstention, the parties also rely on the facts alleged in the complaint.
 
 
 13
 We initially address the question of justiciability, because Jones claims that this case is moot and unripe,[4] and alleges that the damages claims are barred by the Eleventh Amendment. Mootness, ripeness, and standing are questions of law that we review de novo, Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1097-98 (9th Cir.2000), as is the existence of sovereign immunity, Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519, 522 (9th Cir.2001).
 
 A. MOOTNESS
 
 14
 Jones argues that this case is moot because Plaintiffs' claims for injunctive and declaratory relief arise from the 2000 presidential election, which has already taken place. A case becomes moot "when the issues presented are no longer `live' or the parties lack a legally cognizable interest in the outcome." Clark v. City of Lakewood, 259 F.3d 996, 1011 (9th Cir.2001) (citations omitted).
 
 
 15
 Plaintiffs retain a cognizable interest in their claims for damages, which clearly indicates that a live controversy remains between the parties. Bernhardt v. County of Los Angeles, 279 F.3d 862, 872 (9th Cir.2002) (holding that a plaintiff's claim for damages was not moot although the plaintiff's claim for prospective relief was). And, as the district court held, Plaintiffs' claims for injunctive relief fall within the "capable of repetition, yet evading review" exception to the mootness doctrine. A case falls within this exception where: (1) the challenged action was too short in duration to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).
 
 
 16
 Election cases often fall within this exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits. See, e.g., id.; Norman v. Reed, 502 U.S. 279, 287-88, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992); Reich v. Local 396, Internat'l Brotherhood of Teamsters, 97 F.3d 1269, 1272 n. 5 (9th Cir.1996); Baldwin v. Redwood City, 540 F.2d 1360, 1365 (9th Cir.1976); Becker v. Fed. Election Comm'n, 230 F.3d 381, 389 (1st Cir.2000). We have explained:
 
 
 17
 Election cases like the present one come within the type of controversy that is "capable of repetition, yet evading review."... Appellate courts are frequently too slow to process appeals before an election determines the fate of a candidate. If such cases were rendered moot by the occurrence of an election, many constitutionally suspect election laws — including the one under consideration here — could never reach appellate review.
 
 
 18
 Joyner v. Mofford, 706 F.2d 1523, 1527 (9th Cir.1983).
 
 
 19
 Here, the district court found that Porter had only "six to eight months from the identification of the party candidates to the election to create his website, and barely two weeks from the creation of his election website to the date of the actual election to fully litigate this case." Plaintiffs are likely to be subjected to this same type of action again, because Porter has expressed his intent to create a similar website in future presidential elections, the other plaintiffs are likely to use such a website, and there is no indication that Jones will not enforce the election laws against Plaintiffs in the future.[5] See Baldwin, 540 F.2d at 1365 (9th Cir.1976) (holding that controversy was capable of repetition, yet evading review, because plaintiffs had shown that they had used political signs in past elections, that they wanted to use them in future elections, and that city officials indicated that they would continue to enforce the prohibitions on that activity). We therefore reject Jones's argument that this case is moot.
 
 B. RIPENESS
 
 20
 Jones also argues that this case is not ripe to the extent that Plaintiffs' allegations are based on activities intended for the 2004 election. The district court did not resolve the issue of ripeness, instead merging the ripeness analysis with its decision to abstain under Pullman.
 
 
 21
 "[A] case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur." Clinton v. Acequia, Inc., 94 F.3d 568, 572 (9th Cir.1996). But as a fair reading of Plaintiffs' amended complaint indicates,[6] Plaintiffs' allegations do not concern the 2004 election, but are based on events surrounding the 2000 election, thus presenting a fully developed factual scenario. Porter's statement of intent to set up a similar website in 2004 is relevant to Plaintiff's claim that this controversy is capable of repetition, yet evading review, and cannot be read to constitute a separate, unripe claim.
 
 C. ELEVENTH AMENDMENT
 
 22
 Jones next argues that the Eleventh Amendment bars not only Plaintiffs' claims for prospective relief, but also their damages claims. These arguments are meritless.
 
 
 23
 The Eleventh Amendment erects a general bar against federal lawsuits brought against a state. Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). However, suits against a state official are an exception to this bar. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under the doctrine of Ex parte Young, suits against an official for prospective relief are generally cognizable, whereas claims for retrospective relief (such as damages) are not. Papasan, 478 U.S. at 277-78, 106 S.Ct. 2932; Edelman v. Jordan, 415 U.S. 651, 664-68, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Jones claims that Plaintiffs may not, consistent with the Eleventh Amendment, adjudicate the legality of past conduct. This argument confuses liability with remedy. Although Plaintiffs' allegations are rooted in events that occurred in the past, the injunctive and declaratory relief that they seek would prevent future and ongoing illegality.[7] The Eleventh Amendment poses no bar to Plaintiffs' claims for prospective relief.
 
 
 24
 Jones's argument that the Eleventh Amendment bars claims for damages against state officials in their individual capacities also fails. Hafer, 502 U.S. at 27-31, 112 S.Ct. 358. "[T]he Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983." Id. at 30-31, 112 S.Ct. 358 (internal quotation marks omitted). Although Jones alleges that Plaintiffs' addition of the words "in his individual capacity" to the complaint is a mere pleading device, the Supreme Court has expressly rejected this argument. See id. at 27, 112 S.Ct. 358 ("[T]he distinction between official-capacity suits and personal-capacity suits is more than `a mere pleading device.'") (citation omitted). The Eleventh Amendment does not bar Plaintiffs' suit.
 
 III.
 PULLMAN ABSTENTION
 
 25
 Having determined that Plaintiffs present a justiciable controversy and that their suit is not barred by the Eleventh Amendment, we hold that the district court erred in abstaining under Pullman. We review a decision to abstain and stay proceedings under Pullman for abuse of discretion. Cinema Arts, Inc. v. Clark County, 722 F.2d 579, 580 (9th Cir.1983). Abstaining under Pullman constitutes an abuse of discretion when the requirements for Pullman abstention are not met. Id. at 582; C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir.1983).
 
 
 26
 Pullman abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy" that is properly before it. Canton v. Spokane Sch. Dist. No. 81, 498 F.2d 840, 845 (9th Cir.1974). By allowing "federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions," San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1104 (9th Cir.1998), Pullman abstention is intended both to avoid "a collision between the federal courts and state ... legislatures," id. at 1105 (quoting Waldron v. McAtee, 723 F.2d 1348, 1351 (7th Cir.1983)), and to prevent "the premature determination of constitutional questions," C-Y, 703 F.2d at 377 (quoting Martin v. Creasy, 360 U.S. 219, 224, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959)).
 
 
 27
 In order to "give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims," Pullman abstention should rarely be applied. Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). It is appropriate to abstain under Pullman only if each of the following three factors is present: "(1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) [the proper resolution of] the possible determinative issue of state law is uncertain." Confederated Salish, 29 F.3d at 1407; accord Canton, 498 F.2d at 845. Thus, the absence of any one of these three factors is sufficient to prevent the application of Pullman abstention.
 
 
 28
 Abstention was inappropriate because the first Pullman factor was not present here. Plaintiffs also argue that the second Pullman factor was not satisfied, because Jones's threats of prosecution constitute an unlawful prior restraint in violation of the Constitution, and under prior restraint doctrine, a limiting construction of sections 18521 and 18522 will not resolve the claim that the threatened prosecution was unconstitutional. While Plaintiffs appear to allege a colorable prior restraint claim, in light of our determination that the first Pullman prong is not satisfied, we need not address whether the second or third Pullman factor is present.
 
 
 29
 The first Pullman factor requires that "the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open." Confederated Salish, 29 F.3d at 1407. We have held that, in First Amendment cases, the first Pullman factor "will almost never be present because the guarantee of free expression is always an area of particular federal concern." Ripplinger v. Collins, 868 F.2d 1043, 1048 (9th Cir.1989). "Indeed, constitutional challenges based on the first amendment right of free expression are the kind of cases that the federal courts are particularly well-suited to hear. That is why abstention is generally inappropriate when first amendment rights are at stake." J-R Distribs., Inc. v. Eikenberry, 725 F.2d 482, 487 (9th Cir.1984), overruled on other grounds by Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).
 
 
 30
 Our special concern with abstention in the First Amendment context arises in part from the fact that in many cases, the delay that comes from abstention may itself chill the First Amendment rights at issue. See, e.g., Zwickler, 389 U.S. at 252, 88 S.Ct. 391 (holding that to abstain and thus "force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect"); City of Houston v. Hill, 482 U.S. 451, 467-68, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987); J-R Distribs., 725 F.2d at 488; Garvin v. Rosenau, 455 F.2d 233, 239 (6th Cir.1972) ("Further delay necessitated by abstention would be inconsistent with the policy of protecting the First Amendment against possible chilling influences.").[8]
 
 
 31
 In finding that it was appropriate to abstain from the as-applied challenge presented here, the district court distinguished the cases discussed above because they involved facial challenges, not as-applied challenges. The district court was correct in noting that there is a distinction between facial and as-applied challenges for purposes of Pullman analysis. However, that distinction relates to the second Pullman factor, not the first Pullman factor.[9] The danger under the first Pullman prong that the decision to abstain might itself chill speech applies to both facial and as-applied challenges. The Supreme Court has clearly stated that "abstention doctrine is inappropriate for cases ... where ... statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities." Dombrowski v. Pfister, 380 U.S. 479, 489-90, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (emphasis added).
 
 
 32
 The district court relied on Almodovar v. Reiner, 832 F.2d 1138, 1140 (9th Cir.1987), for the proposition that there is no absolute rule against abstention in First Amendment cases. Almodovar is the only First Amendment case in which we have found that Pullman abstention was appropriate.[10] Almodovar involved an unusual procedural setting; the issue in question was already before the state supreme court. As a result, we concluded that "[t]he fears of chill that justify our preference against abstention in first amendment cases are not present in this instance." 832 F.2d at 1140 ("[T]he litigants need not undergo the expense or delay of a full state court litigation because other parties are already presenting the issue to the California Supreme Court."). Thus, the delay that is particularly pernicious in First Amendment cases was not an issue.
 
 
 33
 That unique circumstance is absent here. The district court claimed that "no fear of a chilling effect ... is present in this instance," in light of the fact that Porter does not intend to set up his website until 2004. However, the parties have already been litigating the case in federal court for over two years, and it is far from clear that the case would be resolved prior to the 2004 election if Plaintiffs were sent to state court. Further delay of the adjudication of Plaintiffs' First Amendment claims is not warranted. See Baggett, 377 U.S. at 379 n. 15, 84 S.Ct. 1316 ("[W]here, as here, the litigation has already been in the federal courts an inordinately long time, considerations of equity require that the litigation be brought to an end as quickly as possible.") (quoting Pub. Utilities Comm'n v. United Fuel Co., 317 U.S. 456, 463, 63 S.Ct. 369, 87 L.Ed. 396 (1943)). Because the first factor required for Pullman abstention was not satisfied, abstention was inappropriate.
 
 IV.
 DAMAGES CLAIMS
 
 34
 Plaintiffs assert that the district court erred in dismissing their damages claims. Dismissal of a complaint or part of a complaint under Rule 12(b)(6) is reviewed de novo. Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir.2001). In light of our recent decision in Galbraith v. County of Santa Clara, we reverse the district court's dismissal of these claims.
 
 
 35
 To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2). Rule 8(a)(2) requires only that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).
 
 
 36
 In Branch v. Tunnell ("Branch I"), however, we adopted "a heightened pleading standard in cases in which subjective intent is an element of a constitutional tort action." 937 F.2d at 1386. Under that standard, "in order to survive a motion to dismiss, plaintiffs must state in their complaint non-conclusory allegations setting forth evidence of unlawful intent." Id. (citation and internal quotation marks omitted). We reaffirmed this statement in Branch v. Tunnell ("Branch II"), 14 F.3d 449 (9th Cir.1994). The district court found that the allegations in Plaintiffs' amended complaint failed to meet this standard.[11]
 
 
 37
 In Galbraith, we held that following the Supreme Court's decision in Crawford-El v. Britton, "Branch I and II are no longer good law to the extent that they require heightened pleading of improper motive in constitutional tort cases." 307 F.3d at 1125. This is consistent with Crawford-El's directive that we are to follow those pleading rules established in the Federal Rules of Civil Procedure and by statute, and that we are not to establish our own. Crawford-El, 523 U.S. at 594-97, 118 S.Ct. 1584; see also Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Thus, the liberal notice pleading standards of Rule 8(a) are appropriate here. Because there is no dispute that Plaintiffs' amended complaint satisfies the requirements of Rule 8(a), we reverse the district court's dismissal of the damages claims and remand for consideration of the merits.
 
 CONCLUSION
 
 38
 We reverse the district court's stay of Plaintiffs' claims under Pullman abstention because there are no special circumstances here that would indicate that we may disregard our general unwillingness to abstain in First Amendment cases when abstention itself could result in chilling the very First Amendment rights that plaintiffs seek to protect by suit. Additionally, we reverse the district court's dismissal of Plaintiffs' damages claims for failure to satisfy the heightened pleading requirements of Branch I, because a heightened standard is no longer appropriate after Galbraith.
 
 
 39
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 California Elections Code section 18521 states in relevant part:
 A person shall not directly or through any other person receive, agree, or contract for, before, during or after an election, any ... valuable consideration ... for himself or any other person because he or any other person: (a) Voted, agreed to vote, refrained from voting, or agreed to refrain from voting for any particular person or measure.... (d) Induced any other person to: ... (3) Vote or refrain from voting for any particular person or measure. Any person violating this section is punishable by imprisonment in the state prison for 16 months or two or three years.
 
 
 [2]
 California Elections Code section 18522 states in relevant part:
 [A] person ... shall [not] directly or through any other person ... pay ... or offer or promise to pay ... any ... valuable consideration to or for any voter or to or for any other person to: (a) Induce any voter to: ... (2) Vote or refrain from voting at an election for any particular person or measure ... Any person or candidate violating this section is punishable by imprisonment in the state prison for 16 months or two or three years.
 
 
 [3]
 All of the plaintiffs other than Porter are California and Massachusetts voters or groups of voters who intended to use Porter's website
 
 
 [4]
 In its discussion of justiciability, the district court found that Plaintiffs established standing. Jones does not raise this issue before us, and we agree with the district court that Plaintiffs have standing to bring this case. Although Jones did not specifically initiate action against Porter's website, "[i]t is sufficient for standing purposes that ... there is a credible threat that the challenged provision will be invoked against the plaintiff."LSO, Ltd. v. Stroh, 205 F.3d 1146, 1154-55 (9th Cir.2000). The district court noted that Jones directly threatened to take action against a website that Plaintiffs allege is functionally identical to Porter's website. Jones's letter generally threatened "[a]ny person or entity that tries to exchange votes or brokers the exchange of votes," and Jones insists in this litigation that sections 18521 and 18522 outlaw Porter's activities. In addition, the fact that Porter took down his website after Jones threatened voteswap.com indicates that Jones' activities "allegedly `chill' conduct protected by the First Amendment." Navegar, Inc. v. United States, 103 F.3d 994, 999 (D.C.Cir.1997); see also LSO, 205 F.3d at 1156 (finding a credible threat of prosecution in part because "LSO has already engaged in self-censorship"). Because there is a credible threat of prosecution in this case, Plaintiffs have standing to bring this suit.
 
 
 [5]
 Jones responds that he will not be Secretary of State in 2004, and thus will be unable to enforce the election laws. This is immaterial, however, because Plaintiffs have sued Jones for injunctive and declaratory relief in his official capacity, and thus any such relief would be binding on his successors in officeSee Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (noting that "when officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation").
 
 
 [6]
 Plaintiffs only mention the 2004 election in the section of their complaint entitled "Continuing Controversy."
 
 
 [7]
 The cases that Jones cites stand only for the proposition that a plaintiff may not couch in terms of injunctive and declaratory relief a compensatory, backward-looking remedy that would be otherwise barred by the Eleventh Amendment, such as a damages or quiet title remedyCompare Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 281-83, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (barring a suit that was equivalent to a quiet title suit); Papasan, 478 U.S. at 278, 106 S.Ct. 2932 (barring "relief [that] is tantamount to an award of damages for a past violation of federal law, even though styled as something else") with Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1049 (9th Cir.2000) (allowing a suit to enjoin state officers from collecting an allegedly illegal state tax).
 
 
 [8]
 Plaintiffs have filed a motion requesting that we take judicial notice of certain court records and administrative reports, which they claim document the delay that might result if Plaintiffs must proceed in state court before they may return to federal court. As the cited cases indicate, our concern regarding delay in First Amendment cases is well-established. Thus we deny Plaintiffs' motion to take judicial notice
 
 
 [9]
 The secondPullman factor, which involves an evaluation of whether a constitutional determination may be avoided, is frequently absent from a facial challenge, because a constitutional determination is generally required to assess a frontal attack upon a statute. See, e.g., Baggett v. Bullitt, 377 U.S. 360, 375-78, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) (noting that in light of the facial challenge at issue, abstention was inappropriate because a lengthy series of state lawsuits might be required before the constitutional issue could be entirely evaded); J-R Distribs., 725 F.2d at 488 (noting that, under a facial challenge, some provisions of the statute "are not susceptible to such saving constructions"). In contrast, in as-applied cases a statute may be construed narrowly so as not to apply to the facts in the case presented, thus averting a constitutional determination. See, e.g., Procunier v. Martinez, 416 U.S. 396, 402 n. 5, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) ("Where the case turns on the applicability of a state statute or regulation to a particular person or a defined course of conduct, resolution of the unsettled questions of state law may eliminate any need for constitutional adjudication."), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).
 
 
 [10]
 The only other First Amendment case in which a circuit court has found thatPullman abstention was appropriate is United Home Rentals v. Texas Real Estate Commission, 716 F.2d 324 (5th Cir.1983). In contrast to the case at hand, United Home Rentals involved a commercial speech question, regarding whether the government could require that employees of home rental agencies have real estate licenses. The court did not consider the danger that abstention would chill the First Amendment rights at issue, nor did it recognize the concern that the Supreme Court and other circuit courts have expressed regarding the chilling effect of delay on noncommercial speech. Additionally, it appears from the court's discussion of ongoing state administrative proceedings that the court intermingled Younger principles with the principles underlying Pullman abstention. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). United Home Rentals is therefore inapplicable to the case before us.
 
 
 [11]
 Plaintiffs argue that, if theBranch I's heightened pleading standard does apply, then their complaint meets it. Because Branch I's heightened pleading standard does not survive the Supreme Court's decision in Crawford-El, we do not address this contention.