Emerson M.F. JOU, M.D., Individually, and on behalf of the class or others similarly situated, Plaintiffs,

v.

Gary W.B. CHANG, In his capacity as Judge of the First Circuit Court, State of Hawaii; Does 1–100, Defendants.

No. CV 04–00718DAEBMK.

United States District Court, D. Hawai'i.

Dec. 10, 2004.

Stephen M. Shaw, Honolulu, HI, for Emerson M.F. Jou, M.D., Individually,

And On Behalf Of The Class Or Others Similarly Situated, plaintiff.

## ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER; ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR PRELIMINARY INJUNCTION; ORDER DISMISSING PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE

DAVID ALAN EZRA, Chief Judge.

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After reviewing Plaintiff's motion and the supporting and opposing memoranda, the Court DENIES Plaintiff's *Ex Parte* Motion for Temporary Restraining Order, DENIES Plaintiff's *Ex Parte* Motion for Preliminary Injunction, and DISMISSES Plaintiff's complaint without prejudice.

### BACKGROUND

Plaintiff Emerson M.F. Jou, M.D., is challenging the constitutionality of Hawaii Revised Statute § 607–14, which establishes a "loser pays" rule regarding attorneys fees in certain civil suits. Plaintiff alleges that this statute violates the U.S. Constitution in the following ways: the law chills the rights of tort claimants to file suit, thus violating the First Amendment by infringing on the right to petition, and moreover due to unconstitutional vagueness and overbreadth; it discriminates between tort claimants and other litigants in violation of the Equal Protection Clause of the Fourteenth Amendment; it violates the due process clauses of the Fifth and Fourteenth Amendments because it is so vague as to lack fair warning; and it violates the Takings Clause of the Fifth Amendment in that it threatens to take property, including the property interests in causes of action, without due process of law.

Although Plaintiff's pleadings understandably downplay this pending litigation and provide scant detail regarding the history of the case, it is apparent that Plaintiff in the instant case is also the plaintiff in a tort action that is proceeding in the First Circuit Court of Hawaii against defendants including Government Employees Insurance Company. (*See* Pl. Mot. for TRO, Ex. E.) Judge Gary W.B. Chang, Defendant in the instant case, is presiding over Plaintiff's state court action. Plaintiff's state court claims were dismissed, judgment was entered against him, and the prevailing defendants have filed a motion for attorneys fees, which is pending. Plaintiff filed this complaint in the District of Hawaii on December 7, 2004, along with a motion for preliminary injunction and a motion for a temporary retraining order. Plaintiff claims that unless Defendant is enjoined pursuant to § 1983 from enforcing the statute and awarding attorneys fees to the state court defendants, Plaintiff will suffer irreparable harm.

### STANDARD OF REVIEW

The standard for granting a preliminary injunction and the standard for granting a temporary injunction are identical. *State of Hawaii v. Gannett Pacific Corp.*, 99 F.Supp.2d 1241, 1247 (D.Haw. 1999). The Ninth Circuit applies a "sliding scale" analysis for the issuance of both temporary restraining orders and preliminary injunctions, requiring the court to balance the plaintiff's likelihood of success on the merits with the hardships that would be caused to the plaintiff, the defendant, or the public if the injunction were granted or denied. *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988) (citations omitted) (stating "[i]f the balance of harm tips decidedly toward

the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly.").

■ Specifically, factors considered when determining whether to grant a preliminary injunction are:

(1) the likelihood of success on the merits;

(2) the possibility of irreparable injury to the moving party if relief is not granted;

(3) the extent to which the balance of hardships favors the respective parties; and

(4) in certain cases, whether the public interest will be advanced by granting the preliminary relief.

*Miller v. California Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir.1994).

■ These factors have been incorporated into a test under which the moving party may meet its burden by demonstrating either "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in [its] favor." *American Tunaboat Ass'n v. Brown*, 67 F.3d 1404, 1411 (9th Cir.1995). The " 'serious questions' " must be " 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.' " *Rice v. Cayetano*, 941 F.Supp. 1529, 1537 (D.Haw.1996) (citations omitted).

■ These formulas are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985) (citations omitted). "Under either formulation, the moving party must demonstrate a sig-

nificant threat of irreparable injury, irrespective of the magnitude of the injury." *Big County Foods v. Bd. of Educ.*, 868 F.2d 1085, 1088 (9th Cir.1989).

## DISCUSSION

Given the unity of the standards for granting temporary restraining orders and preliminary injunctions, as well as the fact that the texts of Plaintiff's motions are virtually identical, this Court examines Plaintiff's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction together. However, before this Court can properly reach the issue of whether the likelihood of success, the irreparable nature of the injury, and a balancing of public interest and litigants' hardships weighs in favor of granting a temporary restraining order or a preliminary injunction, it must first determine whether federal review of this controversy is appropriate at all. Because this Court finds that federal review of Plaintiff's case is impermissible given the abstention doctrine first articulated by the U.S. Supreme Court in *Younger v. Harris*, no ruling is issued as to whether a preliminary injunction or temporary restraining order would otherwise be appropriate in this case.

I. *Younger v. Harris dictates federal abstention from Plaintiff's claim, because a state proceeding is pending, an important state interest is involved, and Plaintiff has the opportunity to present his constitutional claims for state court appellate review.*

■ Under the abstention doctrine articulated in *Younger v. Harris*, out of deference to the "vital" federalism-based principle of comity, federal courts may not issue declaratory or injunctive relief against unconstitutional (under the U.S. Constitution) state action, if: (1) the plain-

tiff is, at the time of the initiation of the federal action, a party to pending state proceedings; (2) the proceedings involve important state interests; and (3) the plaintiff has an adequate opportunity to present his or her federal constitutional claims in the state court system. 401 U.S. 37, 49, 91 S.Ct. 746 (1971). Although *Younger* was decided and originally applied in the context of a Constitutional violation in a criminal proceeding, it is well established that *Younger* applies equally in the context of civil proceedings, including state administrative proceedings as is the case here. (See *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 627 & n. 2, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432–34, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). The Court has clarified that the *Younger* abstention doctrine is applicable to noncriminal judicial proceedings whenever an important state interest is at issue. *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Huffman v. Pursue,* 420 U.S. 592, 604–605, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

In explaining which state interests qualify as "important," the Court has held that *Younger* abstention will apply to cases involving the state's interest in effectuating its policy directives, as well as the state's interest in the functioning of its judicial system. *See, e.g., Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). In Plaintiff's case, the Constitutional question involves both the state's important policy interest in discouraging frivolous and vexatious litigation, as well as the state's interest in the functioning of its judicial system. As such, this Court concludes that Plaintiff's case does involve an important state interest. Moreover, despite Plaintiff's assertions to the contrary, which are discussed in detail below, this Court finds that there is also a pending state proceeding, and that the state appellate system will provide Plaintiff with an adequate forum in which to first seek relief for the alleged constitutional violations.

II. *This Court is not persuaded by Plaintiff's arguments that Younger abstention is inappropriate in this case.*

Plaintiff argues that *Younger* abstention is not appropriate in this case for five reasons: (1) a violation of the First Amendment is alleged; (2) the backlog of cases in the state court system prevents Plaintiff from receiving an adequate state court opportunity to raise the constitutional claims; (3) the "bad faith and harassment" by the judge in Plaintiff's state court case likewise prevents an adequate state court opportunity; (4) the bias of the Hawaii judiciary as a whole prevents an adequate state court opportunity to raise the claims; and (5) the judicial proceedings are not pending, but threatened.

A. *Plaintiff's argument that Hill precludes Younger abstention in First Amendment cases ignores the fact that Hill solely involved Pullman abstention.*

In support of his first argument against *Younger* abstention, Plaintiff cites *City of Houston v. Hill* for the proposition that the U.S. Supreme Court has "been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." 482 U.S. 451, 467, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). In the *Hill* case, the Supreme Court analyzed a city government's claim that the federal courts should exercise abstention under the Court's ruling in *Railroad Commissioner*

*v. Pullman. Hill,* 482 U.S. at 467, 107 S.Ct. 2502 (citing *Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). The Ninth Circuit has rejected the intermingling of *Pullman* and *Younger* principles of analysis. *See Porter v. Jones,* 319 F.3d 483, 493 n. 10 (9th Cir.2003). As the Ninth Circuit has rejected the application of *Pullman* principles to *Younger* analyses, and moreover because the policies underlying each ruling are distinct and clearly inapplicable to one another, this Court refuses to consider *Hill* in this context. When faced with similar attempts to apply the holding of *Hill* to *Younger* abstention analyses, other district courts have reached the same conclusion. *See, e.g., Hindu Temple Society of North America v. Supreme Court of the State of New York,* 335 F.Supp.2d 369, 378 (E.D.N.Y. 2004) (finding *Hill* inapplicable to *Younger* analysis because it pertained to *Pullman* abstention).

B. *Plaintiff's argument that the number of cases pending in the Hawaii state court system will prevent Plaintiff from adequately litigating his constitutional claim therein controverts the principles underlying the Younger doctrine, as well as the policy established by Supreme Court precedent.*

Plaintiff's second argument against *Younger* abstention is based on the premise that the third element required for abstention—an adequate opportunity to raise the constitutional claims in state court—is lacking due to the Hawaii state court system's volume of pending cases. Plaintiff asserts: "Hawaii's appellate backlog provides *no* adequate opportunity to raise the constitutional challenge.... The median of 415 days for an appeal to be decided in the Hawaii Supreme Court falls well below the 280 day American Bar Association standard." (Pl. Mot. for TRO at 11.) In support of these assertions, Plain-

tiff cites the declaration of counsel, as well as an article from Honolulu Advertiser newspaper. (Pl. Mot. for TRO, Ex. B.)

This Court notes that Plaintiff cites no relevant legal precedent, nor is this Court independently aware of any, that would support the assertion that a civil litigant who is dissatisfied waiting for a state appeal may seek a more amenable venue in the federal court system. The Supreme Court rejected an analogous argument in *Moore v. Sims.* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). In *Moore,* the district court ruled that, because proceeding through the state court system would have required the plaintiff to suffer through what the court perceived to be an undue delay without a hearing, *Younger* abstention was inappropriate. *Id.* at 431, 99 S.Ct. 2371. The Court explained: "As for the argument that the delay in affording [appellees] a hearing in state court made *Younger* abstention inappropriate, we cannot distinguish this argument from conventional claims of bad faith and other sources of great, immediate, and irreparable harm if the federal court does not intervene—traditional circumstances where a federal court need not stay its hand." *Id.* at 432, 99 S.Ct. 2371. The Court held that it found no evidence of bad faith or irreparable harm, and therefore the district court's ruling was inappropriate. *Id.* at 432–435, 99 S.Ct. 2371.

Likewise, this Court simply cannot find that the backlog of cases in the Hawaii court system is the result of bad faith, and neither can it be predicted to cause the Plaintiff irreparable harm. Despite Plaintiff's assertions to the contrary, the only tangible harm that will be suffered by Plaintiff is pecuniary in nature, and this can be remedied adequately by the courts through an award of monetary damages. Only in extraordinary circumstances will monetary damages alone give rise to irreparable harm. 11A Charles Alan Wright,

Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2948 (2d ed.1995). An example of extraordinary circumstances would be if a defendant might possibly become insolvent before a judgment could be collected. *Id.* Defendant has made no such showing here.

   C. *Plaintiff's argument that the bad faith and harassment of Defendant will prevent Plaintiff from adequately litigating his constitutional claim in state court is both contrary to the Supreme Court's relevant case precedent, as well as unsupported by sufficient or credible evidence.*

   ■ Plaintiff's third argument against *Younger* abstention is again based on the premise that an adequate opportunity to raise the constitutional claims in state court is lacking, although in this instance Plaintiff claims this is so due to bad faith and harassment on the part of the Defendant, who is the judge presiding over Plaintiff's state court proceeding. This Court finds that Plaintiff's allegations regarding Defendant's execution of nonfinal judgments in unrelated cases involving different parties are irrelevant to the Plaintiff's case here. Moreover, while also unconvinced of the relevance of Plaintiff's claim that Defendant improperly signed an *ex parte* judgment against Plaintiff in a previous, unrelated proceeding, the Court notes that Defendant amended the judgment upon Plaintiff's motion and Plaintiff provides no explanation as to why he would be unable to address any remaining grievances he has through the state's appellate system. Regarding Plaintiff's claims of misconduct in the state court proceeding that Plaintiff now seeks to enjoin, Plaintiff has not proven that, even if true, Defendant's improper signing of an *ex parte* proposed order rises above mere oversight and into the realm of bad faith. And, as with all of Plaintiff's allegations

regarding Defendant's conduct, Plaintiff provides no explanation as to why Plaintiff cannot seek redress of these grievances through the state appellate system.

   The Supreme Court, in ruling upon an insurance company's argument that a presiding judge was so biased against insurance companies as to deny the litigant of an adequate forum for its claims, quoted Blackstone's maxim:

> [T]he law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea.

*Aetna Life Insurance Co. v. Lavoie,* 475 U.S. 813, 829, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Nor will this Court presuppose a bias on the part of Defendant that would affect his professional ability to fairly and impartially administer the law. In order to convince this Court otherwise, Plaintiff would be required to bring forth more substantial and credible proof that Defendant actually acted with bad faith, or was biased by a "direct, personal, substantial, [and] pecuniary" interest. *Id.* (citing *Ward v. Village of Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972)). The allegations by Plaintiff do not rise above what is plausibly explained as a mistake.

   D. *Plaintiff's argument that the general bias of the Hawaii state judiciary will prevent Plaintiff from adequately litigating his constitutional claim in state court is likewise unsupported by sufficient or credible evidence, as well as contrary to the Supreme Court's holdings that establish an assumption of judicial impartiality and professionalism.*

   ■ Plaintiff next raises a fourth argument seeking to negate the existence of an adequate opportunity to raise the constitutional claims in state court, this time based on the assertion that the entirety of the

Hawaii state judiciary is so biased in favor of the insurance industry that Plaintiff will have no meaningful opportunity to litigate his claims in Hawaii state court. Plaintiff bases this argument on the fact that the decision as to whether or not a Hawaii state judge will be retained lies with the Hawaii Judicial Selection Commission ("JSC"), and the assertion that "[o]ne third of the JSC members receive all, or a substantial share of their salaries from outside employment from Hawaii's insurance industry." (Pl. Mot. for TRO at 14.) This assertion is allegedly supported by several attached documents: the declaration of counsel, two articles from the Honolulu–Star Bulletin Newspaper regarding the judicial retention process, a list printed from the newspaper's website of the members of the Judicial Selection Commission, and what appears to be a copy of the Martindale–Hubbell directory listing. (Pl. Mot. For TRO, Exhibit C.) The directory listing indicates that the law firm of the chair of the JSC has or does represent an insurance company, amongst other clients. *Id.* Thus, given the insurance industry's "significant stake in avoiding punitive damage awards," and the "insurance-biased JSC" from which state judges must seek retention, Plaintiff concludes that he has no adequate opportunity to raise his constitutional challenge in the court system of the State of Hawaii.

Although Plaintiff does not actually cite to *Gibson v. Berryhill* in this section of his memorandum, he refers to the "Gibson Bias of the Hawaii Judiciary," which leads this Court to believe he is basing his legal argument on that case. (Pl. Mot. For TRO at 13; *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).) *Gibson v. Berryhill,* however, is distinguishable from this case. *Gibson* involved a state administrative proceeding, and the decision-making administrative board itself had been a litigant opposing the petitioner against whom it ruled. If this is the level

of pecuniary interest by an adjudicating body required to rise to the level of "*Gibson* bias," then there is clearly none evident in this case.

Indeed, the Supreme Court has already ruled on similar arguments by litigants who have not sought redress of their grievances through the state appellate process, but nonetheless seek to prevent *Younger* abstention on grounds that such appeal would be futile due to general assertions of judicial bias. In *Huffman v. Pursue, Ltd.,* the Supreme Court dismissed this argument, because "the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious." 420 U.S. 592, 610, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The Court rebuked the district court for entertaining such an argument, and explained:

> Art. VI of the United States Constitution declares that "the Judges in every State shall be bound" by the Federal Constitution, laws, and treaties. Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do.

*Id.* This Court sees no material difference between the argument advanced by Plaintiffs in this case and the one so resoundingly rejected by the United States Supreme Court.

E. *Plaintiff's argument that his state court proceeding is not "pending" for purposes of Younger abstention is contradicted by the Supreme Court's ruling requiring a similarly-situated civil litigant to exhaust state appellate opportunities prior to commencing federal proceedings.*

██ Plaintiff's fifth and final argument against *Younger* abstention maintains that

in Plaintiff's state court case, the judicial proceedings are actually threatened rather than pending, which negates the first requirement of *Younger.* Plaintiff tries mightily to draw attention away from the fact that there is a state court proceeding at all, making vague references in only a few brief sentences in his 19-page complaint to the state court case that serves as the basis for his standing argument as well as much of his argument against *Younger* abstention.[1] However, it is apparent from what scant information Plaintiff provides that he filed a tort complaint against an insurance company, which was dismissed by order of Defendant, judgment has been entered, and a motion for attorneys fees is pending.

Plaintiff characterizes this state of affairs as a state court proceeding that is "threatened rather than pending," because unless the statute "is declared unconstitutional, it will be used to perfect attorneys fees rulings into judgment." (Pl. Mot. For TRO at 15.) Plaintiff bases this argument on two U.S. Supreme Court cases that this Court finds to be totally inapplicable. One of these cases dealt with whether *Younger* abstention would be appropriate where arrest for violation of state law had been threatened, but no prosecution or even arrest had occurred; the other was filed by a petitioner who had already been convicted, served his sentence, and was facing possible re-arrest for violating the same statute. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Wooley v. Maynard,* 430 U.S. 705, 710, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). The Court finds these cases are wholly inapplicable to this issue.

Rather, this Court finds the facts of *Huffman v. Pursue, Ltd.,* in which a litigant who lost a state civil suit sought to challenge the operative state statute on First Amendment grounds in federal court rather than first pursuing the state appeals process, more analogous to Plaintiff's claims. 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In *Huffman,* the Supreme Court vacated and remanded the trial court's decision not to abstain under *Younger,* explaining that "a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies before seeking relied in the District Court." *Huffman,* 420 U.S. at 608, 95 S.Ct. 1200.

The Court based its decision on the theory that, because an entire trial has already occurred, federal intervention at the appellate stage is even more highly duplicative than earlier intervention. *Id.* Moreover, the Court disapproved of such a "direct aspersion on the capabilities and good faith of state appellate courts." *Id.* The Court also found that such intervention was more disruptive and offensive, because the state has already gone through the process of proving to a court's satisfaction that "its valid policies are being violated in a fashion which would justify judicial abatement." *Id.* at 608–609, 95 S.Ct. 1200. Indeed, the Court noted that a judicial system's appellate courts are often the best suited to the resolution of constitutional questions. *Id.* at 609, 95 S.Ct. 1200. Given the Supreme Court's mandate that a federal district court must not substitute itself for the state's appellate courts, as this deprives the state court system of fair opportunity to resolve federal issues that arise before them, this Court rejects Plain-

---

**1.** Plaintiff's complaint merely states that "[t]here are state court judicial proceedings which are threatened, in the form of a judgment and proceedings in the execution there-

of, claiming attorneys fees..." and "[u]nless enjoined, Defendant threatens to enforce [the statute] against Plaintiff in a case Defendant previously dismissed." (Pl. Compl. at 8, 36.)

tiff's argument that his case is not "pending" for *Younger* purposes.

### *CONCLUSION*

Based on these facts, it appears clear that: (1) there are ongoing state proceedings; (2) the state proceedings involve important state interests; and (3) any appeal to the state appellate court would permit the Plaintiff a full opportunity to vindicate any constitutional right he believes has been violated or may be violated in the course of the state court proceedings. Moreover, this case does not fall into any of the very narrow exceptions involving bad faith, harassment, or other "extraordinary circumstances." See *Younger v. Harris*, 401 U.S. 37, 47–49, 53–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Thus, for the reasons stated above, the Court DENIES Plaintiff's *Ex Parte* Motion for Temporary Restraining Order, DENIES Plaintiff's *Ex Parte* Motion for Preliminary Injunction, and DISMISSES Plaintiff's complaint without prejudice.

IT IS SO ORDERED.