Opinion by Judge O’SCANNLAIN, in which Judge GRABER joins, except as to Part IV, and in which Judge BEA joins, except as to Part III. Judge GRABER filed an opinion dissenting as to Part IV. Judge BEA filed an opinion concurring as to Part III.
OPINION
O’SCANNLAIN, Circuit Judge:
We must decide whether associations have a First Amendment right to serve as official proponents of local ballot initiatives and the extent to which the same Amendment protects the anonymity of initiative proponents.
I
A
This case arises from a political battle concerning labor unions. Chula Vista Citizens for Jobs and Fair Competition (“Chu-la Vista Citizens”), an unincorporated association, and Associated Builders and Contractors of San Diego, Inc., an incorporated association of construction-related businesses (“the Associations”), sought to place an initiative on the Chula Vista municipal ballot. As described by the title of the initiative, the proposed measure “mandated] that the City or Redevelopment Agency not fund or contract for public works projects where there [was] a requirement to use only union employees.” The City of Chula Vista requires that initiative proponents be electors (“the elector requirement”), which excludes non-natural persons from serving as official proponents. Faced with this obstacle, Chula Vista Citizens asked two of its members, Lori Kneebone and Larry Breitfelder, to serve as proponents in place of the Associations. They agreed.
Section 903 of the Chula Vista Charter incorporates the provisions of the California Elections Code that govern initiatives and referenda “so far as such provisions of the Election Code are not in conflict with [the] Charter.” The code establishes several requirements that official proponents must meet to qualify an initiative. First, proponents must file a notice of intent to circulate an initiative petition for signatures, and such notice must be signed by at least one but not more than three proponents. Cal. Elec.Code § 9202(a) (the “notice-filing requirement”). Defendant Donna Norris, as the City Clerk, receives and processes these filings. Proponents must include the written text of the initiative and may include a 500-word statement of “reasons for the proposed petition.” Id. The City Attorney then provides a title and summary of the measure to the proponents. Id. § 9203.
Because the City has a newspaper of general circulation, the proponents must publish the notice of intent, title, and summary in such newspaper and submit proof of publication to the City Clerk. Id. *674 § 9205(a) (the “publication requirement”).[1] Only at that point can the proponents begin circulating their petition for signatures. Id. § 9207.
The initiative petition is typically divided into “sections” to facilitate gathering signatures. See id. § 9201. Each section of the petition must “bear a copy of the notice of intention and the title and summary prepared by the city attorney.” Id. § 9207. Because § 9202(a) requires proponents to sign the notice, the effect of § 9207 is that the identities of official proponents are disclosed to would-be signatories of the petition (the “petition-proponent disclosure requirement”). Proponents have 180 days to file the signed petitions with the City Clerk bearing the requisite number of signatures. Id. § 9208. The City Clerk informs the proponents whether they have gathered enough valid signatures to qualify the initiative for the ballot. Whether the initiative appears on the ballot or immediately becomes law depends on the number of signatures gathered and the actions taken by the City Council.
Kneebone and Breitfelder made two attempts to qualify the initiative for the ballot. The first attempt (“First Petition”) began on August 28, 2008, with the filing of the notice of intent. Kneebone and Breitfelder later submitted 23,285 signatures to Norris after having complied with all the requirements except one: They had not included their names on the notice that appeared on the circulated petitions. Instead, as Kneebone and Breitfelder later informed Norris, they printed the following statement .at the end of each circulated petition: “Paid for by Chula Vista Citizens for Jobs and Fair Competition, major funding by Associated Builders & Contractors PAC and Associated General Contractors PAC to promote fair competition.” On November 12, 2008, Norris rejected the First Petition for failure to include the proponents’ signatures on the notice accompanying the circulated petitions.
The Associations again asked Kneebone and Breitfelder to serve as proponents, which the pair again agreed to do. The second attempt (“Second Petition”) began with the notice filing on March 13, 2009. It complied with all requirements — including the requirement that circulated petitions bear the proponents’ signatures. — appeared on the June 8, 2010 municipal election ballot, and was approved by voters.
B
On April 28, 2009, after Norris rejected their First Petition but before qualifying the Second Petition, the plaintiffs brought this 42 U.S.C. § 1983 suit in the Southern District of California seeking declaratory and injunctive relief. The complaint alleged that the elector and petition-proponent disclosure requirements, both facially and as applied, violate the First Amendment. On June 4, the plaintiffs moved for a preliminary injunction and for an expedited hearing. Because provisions of the state election code were at issue, the State of California intervened as a defendant.
The district court held a hearing on the preliminary injunction motion on August 19. The next day, it ordered supplemental briefing as to whether the Elections Code did, in fact, require that official proponents be natural persons. On March 8, 2010, the district court denied the preliminary injunction motion as moot in light of the success of the Second Petition, and it stayed consideration of the § 1983 suit pending the Supreme Court’s decision in Doe v. Reed, 561 U.S. 186, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010). When the district *675 court lifted the stay, both sides filed motions for summary judgment. The district court granted summary judgment to Norris and her eodefendants on March 22, 2010. It entered its judgment on April 10, and plaintiffs timely appealed.
II
We must first determine whether the dispute over the elector requirement is properly before us. The parties disagree about whether the elector requirement is mandated by state law, municipal law, or the City’s interpretation of either body of law. Relying on the Supreme Court’s decision in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85. L.Ed. 971 (1941), Norris urges us to abstain from deciding the merits of this case if doing so would require us to resolve a contested issue of state law.
“[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.” Harris Cnty. Comm’rs Court v. Moore, 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). Pullman abstention counsels against deciding unnecessary federal constitutional questions, but it is also premised on “avoiding] federal-court error in deciding statelaw questions antecedent to federal constitutional issues.” See Arizonans for Official English v. Arizona, 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). Because abstention “does not implicate [federal courts’] subject matter jurisdiction,” we are “never required to apply Pullman.” Columbia Basin Apartment Ass’n v. City of Pasco, 268 F.3d 791, 802 (9th Cir.2001). “Abstention is, of course, the exception and not the rule, and [the Supreme Court has] been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment.” City of Houston v. Hill, 482 U.S. 451, 467, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (internal citation omitted).
We consider three factors when deciding whether Pullman abstention is appropriate: “(1) there are sensitive issues of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open, (2) constitutional adjudication could be avoided by a state ruling, and (3) resolution of the state law issue is uncertain.” Wolfson v. Brammer, 616 F.3d 1045, 1066 (9th Cir.2010) (internal quotation marks omitted).
The Supreme Court has held that abstention in the First Amendment context is disfavored because “the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right [the plaintiff] seeks to protect.” Hill, 482 U.S. at 467-68, 107 S.Ct. 2502 (internal quotation marks omitted). Our court has been particularly loath to abstain in First Amendment cases: “We have held that, in First Amendment cases, the first Pullman factor will almost never be present because the guarantee of free expression is always an area of particular federal concern.” Porter v. Jones, 319 F.3d 483, 492 (9th Cir.2003) (internal quotation marks omitted). This concern “applies to both facial and as-applied challenges.” Id. at 493. In fact, we have abstained only once in a First Amendment context, and that case had an “unusual procedural setting” because the “issue in question was already before the state supreme court.” Id. at 493-94. In every other procedural setting, we have rejected abstention.
The challenge to the elector requirement implicates the chilling of expression. Hill, 482 U.S. at 467-68, 107 *676 S.Ct. 2502. Indeed, if the elector requirement is unconstitutional, the Associations are being completely deprived of a constitutional right. Moreover, the parties have not indicated that there are any pending actions in the California courts. Porter, 319 F.3d at 492. In this context, the first Pullman factor is not met, and abstention is not warranted. Id. The merits are thus before us.[2]
Ill
The First Amendment provides, “Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.” U.S. Const. amend. 1. By virtue of the Fourteenth Amendment, the First Amendment applies to actions by state governments. Everson v. Bd. of Educ., 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947). The Associations contend that the elector requirement abridges the rights of speech, association, and petition. They further argue that strict scrutiny applies to the elector requirement and results in its invalidity. We begin with the threshold issue of whether the elector requirement implicates the First Amendment.
A
Although the Associations allege violations of speech, associational, and petition rights, our analysis will focus on the freedom of speech. The Associations mention their petition claim, but they provide no legal authority to support it. “A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.” Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir.2012); Acosta-Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir.1993). Thus, we do not address the Associations’ petition claim.
The Associations also allege that the elector requirement is an unconstitutional condition on their right to associate for purposes of political expression. See Speiser v. Randall, 357 U.S. 513, 520-29, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). In the First Amendment context, the right to associate is not a free-standing right; rather, one has the right to associate for the purpose of engaging in activities protected by the First Amendment. Boy Scouts of Am. v. Dale, 530 U.S. 640, 647-48, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000); Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The Associations claim that serving as an official proponent is protected by the Free Speech Clause, and thus that they have a right to associate for the purpose of serving as official proponents. Thus, if serving as an official proponent is not an aspect of free speech, the condition imposed by the elector requirement does not violate the associational rights of the First Amendment. See Dale, 530 U.S. at 648, 120 S.Ct. 2446 (“To determine whether a group is protected by the First Amendment’s expressive associational right, we must determine whether the group engages in ‘expressive association.’”); City of Dallas v. Stanglin, 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (holding that, where the First Amendment does not protect a certain activity, there can be no First *677 Amendment right of association to engage in that activity). Because the Associations’ claim regarding freedom of association depends on the success of their Free Speech claim, we focus on the latter claim.
The question, then, is whether the elector requirement is a law “abridging the freedom of speech.” U.S. Const, amend. I.
B
To know whether the elector requirement abridges the freedom of speech, it is important to identify precisely what sort of infringement the requirement allegedly commits. The Associations list several activities performed by official proponents that they contend are protected speech:
[B]eing a proponent involves core political activity beyond ministerial acts of signing and filing things. A “proponent” begins with an idea about an issue, creates the text of an initiative to implement that idea, does the necessary publication of notices to qualify it, circulates petitions and/or arranges with others to do so, and advocates for the initiative.
The Associations’ listing of these ostensibly expressive activities implies that associations are prohibited from engaging in them. But the Associations’ actions in this case belies that implication. As stated in their complaint, the Associations “decided to propose the Initiative.” “Chula Vista Citizens filed its required Clerk’s Version” of the initiative text, just as “Chula Vista Citizens published the Newspaper Version,” for which “[njeither Ms. Kneebone nor Mr. Breitfelder paid any money.” “Chula Vista Citizens hired The La Jolla Group to circulate the Petition in the City,” and, as the district court pointed out, the Associations were free to advocate for the initiative’s qualification and enactment. In short, the Associations were able to participate in all of the activities they mention.
However, the Associations were dependent on Kneebone and Breitfelder as official proponents in order to engage in these activities. That is the gravamen of their alleged injury. The Associations believe the elector requirement violates the Free Speech Clause because, in their words, “speech-by-proxy is not a constitutionally permissible alternative because it does not allow associations themselves to speak.” The Associations would rather have the legal authority to engage in these activities without relying on natural persons to serve as proxies, and that requires them to be official proponents.
What the Associations seek, then, is the legal authority attaching to the status of an official proponent,[3] and this amounts to a claim that serving as an official proponent is a form of “speech” protected by the First Amendment.
C
We must next determine the nature of the legal authority of official proponents. The Associations do not dispute that the initiative power is a legislative power. And rightly so. As the California Supreme Court has said, the initiative process “represents an exercise by the people of their reserved power to legislate.” Builders Ass’n of Santa Clara-Santa Cruz Cntys. v. Superior Court, 13 Cal.3d 225, *678 118 Cal.Rptr. 158, 529 P.2d 582, 586 (1974).[4]
Norris argues that the distinct role of proponents is to introduce legislation: “[T]he legal acts of a Proponent are acts of legislating, exercising the inherent, reserved power of citizens to legislate for the entity in which they reside.” Under this theory, because the initiative process is a lawmaking one, the activities that commence that process are analogous to the introduction of legislation. At least two California appellate courts support this description of the initiative process. San Francisco Forty-Niners v. Nishioka said the following:
The initiative petition with its notice of intention is not a handbill or campaign flyer — -it is an official election document subject to various restrictions by the Elections Code, including reasonable content requirements of truth. It is the constitutionally and legislatively sanctioned method by which an election is obtained on a given initiative proposal.
75 Cal.App.4th 637, 89 Cal.Rptr.2d 388, 396 (1999). Widders v. Furchtenicht stated that the legislative process begins once a petition is circulated for signatures: “An initiative is put before the people when they are asked to sign a petition to place it on the ballot....” 167 Cal.App.4th 769, 84 Cal.Rptr.3d 428, 438 (2008) (internal quotation marks and citation omitted). If the activities involved in qualifying an initiative for the ballot start the legislative process, then official proponents exercise part of the legislative power.
The Associations resist this characterization. They distinguish between placing an initiative on the ballot (which they concede is a legislative function) and asking electors to place an initiative on the ballot (which they contend is a nonlegislative act). At oral argument, the Associations analogized initiative proponents to lobbyists: The official proponents come to the legislators (i.e., the electors) with a proposal and ask the legislators to introduce a bill (i.e., sign the petition to place the initiative on the ballot).
The problem with the Associations’ proffered distinction is that the incidental role the Associations assign to official proponents is inconsistent with the responsibili *679 ties conferred on official proponents by the California Elections Code. As the California Supreme Court has said, “[Ojfficial proponents of an initiative measure are recognized as having a distinct role — involving both authority and responsibilities that differ from other supporters of the measure.” Perry v. Brown, 52 Cal.4th 1116, 134 Cal.Rptr.3d 499, 265 P.3d 1002, 1017-18 (2011). Official proponents determine when the process will begin by filing the relevant documents, Cal. Elec.Code § 9202(a), craft the text of the initiative that will be put before the people, id., ensure that the people know that the initiative process has commenced, id. § 9205(a)-(b), and exercise a measure of control over the arguments in favor of the initiative to which the people will be exposed, id. § 9287. Thus, the California Elections Code “place[s] an obligation upon the official proponents of an initiative measure to manage and supervise the process by which signatures for the initiative petition are obtained.” Perry, 134 Cal.Rptr.3d 499, 265 P.3d at 1017. If public officials refuse to defend a successful initiative in court, official proponents may “intervene or [ ] participate as real parties in interest in a judicial proceeding to assert the state’s interest in the initiative’s validity and to appeal a judgment invalidating the measure.” Id. 134 Cal.Rptr.3d 499, 265 P.3d at 1025. But see Hollingsworth v. Perry, — U.S. -, 133 S.Ct. 2652, 2663-67, 186 L.Ed.2d 768 (2013) (holding that official proponents of California’s Proposition 8 lacked Article III standing in federal court). These rights and responsibilities are hardly consistent with the Associations’ minimalist characterization of official proponents.
Perhaps most tellingly, unlike a lobbyist’s suggestion to a legislator, qualifying an initiative for the ballot is a necessary step for the people to exercise the initiative power. See Cal. Elec.Code § 9200 (authorizing municipal initiatives “pursuant to” the rules in the Elections Code); cf. Costa v. Superior Court, 37 Cal.4th 986, 39 Cal.Rptr.3d 470, 128 P.3d 675, 685 (2006) (discussing procedural challenges to ballot initiatives). In this critical respect, it is more like introducing legislation. Thus, by seeking the legal authority of official proponents, the Associations seek the legislative power of setting the initiative process in motion.
D
We turn now to the question of whether serving as an official proponent, as we have described that status, is an aspect of the freedom of speech protected by the First Amendment.
The Associations rely primarily on Meyer v. Grant, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). In Grant, Colorado forbade initiative proponents from employing paid petition circulators to gather signatures. Id. at 417, 108 S.Ct. 1886. The Court held that “[t]he circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change.” Id. at 421, 108 S.Ct. 1886. Thus, it applied exacting scrutiny to the challenged ban. Id. at 420, 428, 108 S.Ct. 1886.
As the district court astutely observed, Grant held that “advocation and circulation” of a petition is protected by the First Amendment, but no one disputed the legal status of the initiative proponents in Grant. Whether the activities of an official proponent are protected by the freedom of speech is a distinct question from whether serving as an official proponent (that is, having the legal authority attaching to official proponents) has the same protection. Thus, the issue presented by the Associations is unanswered by Grant. *680 Indeed, it is one that neither the Supreme Court nor our circuit has decided.
The Supreme Court has, however, addressed an analogous situation to the one presented in this case. In Nevada Commission on Ethics v. Carrigan, a state ethics law required public officers to re-cuse themselves from voting on matters in which they might reasonably be said to have a conflict of interest. — U.S. -, 131 S.Ct. 2343, 2346, 180 L.Ed.2d 150 (2011). Carrigan challenged the law, asserting that the First Amendment protected his right to vote in the city council. Id. at 2347.
The Supreme Court held that “restrictions upon legislators’ voting are not restrictions upon legislators’ protected speech.” Id. at 2350. Importantly, the Court cited the legislative nature of voting as the reason for its decision: “The Nevada Supreme Court thought a legislator’s vote to be protected speech because voting ‘is a core legislative function.’ We disagree, for the same reason.” Id. at 2347 (internal citation omitted). The Court elaborated on this rationale: “[A] legislator’s vote is the commitment of his apportioned share of the legislature’s power to the passage or defeat of a particular proposal. The legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it.” Id. at 2350. The Court went further and stated that “the act of voting [in a legislature] symbolizes nothing.” Id. Even if the legislative act of voting were expressive, the Court reasoned, the challenge would still fail because “[t]his Court has rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message.” Id. at 2351.
Carrigan establishes that the legal authority attaching to a legislative office is not an aspect of the freedom of speech protected by the First Amendment. The Associations seek the legislative authority that comes with serving as official proponents. Following Carrigan, we conclude that serving as an official proponent is not an aspect of speech within the meaning of the First Amendment.[5]
E
The Associations seem to think that because official proponents have authority to engage in expressive activities, such as the power to write the 500-word statement of reasons, the freedom of speech requires that they be permitted to be official proponents. But from the premise that certain activities are expressive, it does not follow that the legal authority to engage in such activities is part of the freedom of speech. This case presents that threshold issue: If serving as an official proponent is not part of the freedom of speech, then the expressive nature of official proponents’ activities is irrelevant.
A contrary conclusion would produce absurd results. If the mere fact that an activity is expressive meant that there was a First Amendment right to engage in that activity, irrespective of the context in which the activity occurs, then the First Amendment would protect the right of any voter to participate in the debates of the state legislature. After all, such debates are highly expressive in nature. Yet, no one would maintain that the First Amendment prohibits limiting participation in such debates to members of the state legislature. Similarly, the exercise of an official proponents’ authority, if expressive in *681 nature, can be limited to those who qualify as official proponents. The First Amendment does not require that associations be allowed to share in the legislative power simply because the exercise of such power might be expressive.
The Supreme Court made this clear in Carrigan. In addition to upholding Nevada’s recusal law, the Court also upheld the recusal provision’s prohibition on advocacy. Id. at 2347. Because the recusal law was constitutional with respect to legislative voting on conflicted legislation, then it surely must also be the case, the Court reasoned, that the provision restricting who might advocate on that legislation was equally constitutional as a reasonable time, place, and manner restriction. Id. (citing Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). As the Supreme Court observed, “Legislative sessions would become massive town-hall meetings if those who had a right to speak were not limited to those who had a right to vote.” Id. So too here, any limit that the elector requirement might place on expression incidentally is a reasonable time, place, and manner restriction resulting from the initial, constitutional limitation on whom the people have designated to serve in this official role.
• As the Court emphasized in Carrigan, Doe v. Reed is consistent with Carrigan’s holding, id. at 2351, and it is consistent with the analysis here. Whereas Carrigan concerned whether the legal authority to exercise legislative power is protected by the freedom of speech, Doe concerned the extent to which the exercise of legislative power is protected.[6] Doe did not analyze restrictions on who could sign initiative petitions; it discussed whether the signing of a petition was expressive.[7] 561 U.S. at 194-96, 130 S.Ct. 2811. The Associations in this case seek the legal authority to exercise legislative power, which is why the analysis is governed by Carrigan. Kneebone and Breitfelder, by contrast, undoubtedly have such authority, but they seek to exercise it in a certain way. Their challenge is governed by Doe.[8] See infra Part IV.
The challenge to the elector requirement asks whether the freedom of speech requires the people to delegate legislative power to associations, and Carrigan answers that it does not.[9]
*682 IV
In their challenge to the petition-proponent disclosure requirement, Kneebone and Breitfelder contend that the compelled disclosure of their identities at the point of contact with signatories violates the freedom of speech.
A
The Supreme Court has never held that there is some “freewheeling right” to anonymity in the Constitution. Doe, 561 U.S. at 218 n. 4, 130 S.Ct. 2811 (Stevens, J., concurring in part and concurring in judgment). Rather, the Court has said that the “decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.” McIntyre v. Ohio Elections Comm’n, 514 U.S. 334, 342, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). In the compelled disclosure context, the abridgment of the freedom of speech consists not in a violation of some amorphous “right to anonymity”; it consists in the “direct regulation of the content of speech,” id. at 345, 115 S.Ct. 1511, or in the burden such disclosures place on speech by, for example, deterring the speaker from speaking, Buckley v. Valeo, 424 U.S. 1, 68, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); see also Citizens United, 558 U.S. at 480-83, 130 S.Ct. 876 (Thomas, J., concurring in part and dissenting in part). Our own precedent has followed this basic framework. See ACLU v. Heller, 378 F.3d 979, 987 (9th Cir.2004) (describing the constitutional injury of compelled disclosure as the “direct regulation of the content of political speech”).
We have never held that the content of a ballot initiative petition is part of an official proponent’s freedom of speech. The Supreme Court has recognized that the content of political handbills, McIntyre, 514 U.S. at 337-47, 115 S.Ct. 1511, the speech of initiative petition circulators, Buckley v. Am. Constitutional Law Found., Inc., 525 U.S. 182, 197-200, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), and the signatures of initiative petition signatories, Doe, 561 U.S. at 194-96, 130 S.Ct. 2811, are protected speech, and thus the compelled disclosure of the speaker’s identity to the public constitutes a burden on such speech or a direct regulation thereof. But initiative petitions are official election documents, San Francisco Forty-Niners, 89 Cal.Rptr.2d at 396, and the Court has not had occasion to consider whether the content of such documents constitutes protected speech.[10]
However, because the parties to this litigation agree that the petition-proponent disclosure requirement is a regulation of political speech,[11] we need not resolve that *683 question. We will assume — -without deciding — that an official proponent’s decision to disclose his identity on the face of an initiative petition constitutes political speech, and under McIntyre, the compelled disclosure of such information is “a direct regulation of the content of speech” subject to First Amendment scrutiny. McIntyre, 514 U.S. at 345, 115 S.Ct. 1511.
B
Of course, we must determine which standard of review governs our analysis of the petition-proponent disclosure requirement’s constitutionality.[12]
The Supreme Court has “a series of precedents considering First Amendment challenges to disclosure requirements in the electoral context. These precedents have reviewed such challenges under what has been termed ‘exacting scrutiny.’ ” Doe, 561 U.S. at 196, 130 S.Ct. 2811. “That standard requires a substantial relation between the disclosure requirement and a sufficiently important governmental interest.” Id. (internal quotation marks omitted). The “ ‘strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.’” Id. (quoting Davis, 554 U.S. at 744, 128 S.Ct. 2759). Like the case before us, Doe considered the constitutionality of a law requiring the disclosure of identifying information — in that case, the identities of petition signatories. 561 U.S. at 190-95, 130 S.Ct. 2811. The Court applied exacting scrutiny and upheld the law. Id. at 197-202, 130 S.Ct. 2811.
Against this clearly articulated standard of review for compelled disclosure cases, Kneebone and Breitfelder argue that strict scrutiny should apply. They point to American Constitutional Law Foundation (“ACLF ”) as an example of strict scrutiny employed in a disclosure context. The Supreme Court, however, has subsequently characterized the standard of review in ACLF as “exacting scrutiny.” See Doe, 561 U.S. at 196, 130 S.Ct. 2811. Moreover, it was precisely because the Court did not apply strict scrutiny that Justice Thomas wrote separately in ACLF. See 525 U.S. at 214-15, 119 S.Ct. 636 (Thomas, J., concurring in the judgment). Thus, nothing in ACLF provides a basis for applying strict scrutiny to the petition-proponent disclosure requirement.
California makes no effort to distinguish Doe. Rather, it simply asserts that public forum doctrine should govern our analysis. But the state points to no federal case that has adopted such an approach. California might instead have argued that the petition-proponent disclosure requirement relates to the “mechanics of the electoral process,” thus subjecting it to the potentially less-demanding “ordinary litigation test.” See McIntyre, 514 U.S. at 344-45, *684 115 S.Ct. 1511. But Doe forecloses that option. The Doe Court, faced with the compelled disclosure of signatories’ identities, rejected the argument that the legislative character of initiative petitions mandated a lesser form of scrutiny. 561 U.S. at 194-96, 130 S.Ct. 2811. If exacting scrutiny applies to the compelled disclosure of signatories’ identities, there is no reason why official proponents’ identities should not receive the same protection.
We therefore adhere to the Supreme Court’s “series of precedents” regarding compelled disclosure by subjecting the petition-proponent disclosure requirement to exacting scrutiny. Id. at 196, 130 S.Ct. 2811; see also Wash. Initiatives Now (WIN) v. Rippie, 213 F.3d 1132, 1138-39 (9th Cir.2000) (applying exacting scrutiny to a law compelling the disclosure of circulators’ identities, addresses, and compensation).
C
It remains for us to determine whether the petition-proponent disclosure requirement survives exacting scrutiny. In addressing this question, it is important to bear in mind that the statutory scheme, as incorporated by the City Charter, requires proponents to disclose their identities at three distinct moments in the initiative process: the filing of a signed notice with the City Clerk, Cal. Elec.Code § 9202(a), the publication of the notice in a newspaper of general circulation, id. § 9205, and the inclusion of the notice on each section of the circulated initiative petitions, id. §§ 9202(a), 9207. Kneebone and Breit-felder only challenge the last requirement.
The Supreme Court has described exacting scrutiny as a “strict test.” Buckley, 424 U.S. at 66, 96 S.Ct. 612. Although distinct from strict scrutiny, “exacting scrutiny is more than a rubber stamp.” Minn. Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864, 876 (8th Cir.2012). Indeed, “[t]he Supreme Court has not hesitated to hold laws unconstitutional under this standard.” Id. (collecting cases). As Buckley made clear, it is not enough for the state to have “some legitimate governmental interest”; the Court “also ha[s] insisted that there be a ... ‘substantial relation’ between the governmental interest and the information required to be disclosed.” 424 U.S. at 64, 96 S.Ct. 612. Moreover, it is the government’s burden to “show that its interests ... are substantial, that those interests are furthered by the disclosure requirement, and that those interests outweigh the First Amendment burden the disclosure requirement imposes on political speech.” WIN, 213 F.3d at 1138-39; see also Ctr. for Individual Freedom, Inc. v. Tennant, 706 F.3d 270, 282 (4th Cir.2013); Minn. Citizens Concerned for Life, Inc., 692 F.3d at 877. Thus, the mere assertion of a connection between a vague interest and a disclosure requirement is insufficient.
California asserts two interests in the petition-proponent disclosure requirement: (1) informing electors of an official proponent’s identity, and (2) “preserving the integrity of the electoral process.” Quoting Doe, the state claims that the latter interest “extends more generally to promoting transparency and accountability in the electoral process.” Doe, 561 U.S. at 198, 130 S.Ct. 2811. The district court relied on both interests in sustaining the petition-proponent disclosure requirement.
1
California contends that the public has a right to know the identities of official proponents because an initiative is analogous to the introduction of legislation, and therefore “it is no different from the requirement that every bill in the California Legislature be introduced by a member of *685 the Legislature.” California believes that “[^legislation is inherently a public act, regardless of the forum in which it takes place.” The district court agreed, relying on two of our cases that stressed the need for voters to know the identities of those participating in initiative campaigns. See Human Life of Wash., Inc. v. Brumsickle, 624 F.3d 990 (9th Cir.2010); Cal. Pro-Life Council v. Getman, 328 F.3d 1088 (9th Cir.2003).
Even assuming that this interest is sufficiently important to satisfy exacting scrutiny, California must demonstrate that the interest bears a substantial relation to the petition-proponent disclosure requirement. Kneebone and Breitfelder argue that because proponents must disclose their identities at two distinct moments before circulating a petition, any member of the public who wishes to learn the identities of official proponents can do so, and there is no need for disclosure on the face of the petition. California also cites the notice-filing and publication requirements, but it argues that these prior disclosures cut the other way: “[B]y the time proponents’ names are printed on initiative petitions, their identities are already known — the impact on proponents’ privacy is negligible because their names have already been published in a newspaper of general circulation.”
The precedents of the Supreme Court and this circuit have emphasized the importance of anonymity at the point of contact with voters. McIntyre v. Ohio Elections Commission established that “an author’s decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.” 514 U.S. at 342, 115 S.Ct. 1511. In the realm of political speech, anonymity is important because it “provides a way for a writer who may be personally unpopular to ensure that readers will not prejudge her message simply because they do not like its proponent.” Id. The Court therefore applied exacting scrutiny and struck down an Ohio statute requiring authors of any “form of general publication which is designed ... to influence the voters in any election” to disclose their identities. Id. at 338 n. 3, 345-46, 115 S.Ct. 1511.
The Court extended McIntyre’s holding in ACLF. In that case, the Court applied exacting scrutiny to invalidate a Colorado requirement that petition circulators wear badges disclosing their identities at the point of contact with signatories, and it contrasted this invalid rule with the requirement that those same circulators submit affidavits to the state containing their names, addresses, and signatures: “Unlike a name badge worn at the time a circulator is soliciting signatures, the affidavit is separated from the moment the circulator speaks.” 525 U.S. at 198, 119 S.Ct. 636. The Court saw this separation in time as important because revealing one’s identity at the point of contact with signatories “operates when reaction to the circulator’s message is immediate and may be the most intense, emotional, and unreasoned.” Id. at 199, 119 S.Ct. 636 (internal quotation marks omitted).
The Court observed that, when a circu-lator makes contact, “the circulator must endeavor to persuade electors to sign the petition,” id., a concern expressed in McIntyre’s statement that “an advocate may believe her ideas will be more persuasive if her readers are unaware of her identity,” 514 U.S. at 342, 115 S.Ct. 1511. For that reason, ACLF held that “the badge requirement compels personal name identification at the precise moment when the circulator’s interest in anonymity is greatest.” 525 U.S. at 199, 119 S.Ct. 636. By contrast, the affidavit requirement was *686 “responsive to the State’s concern” for providing the identifying information to the public, but it did so without interfering with the point of contact. Id. at 198, 119 S.Ct. 636. Thus, there was not a sufficient governmental interest to justify the badge requirement. Id. at 200, 119 S.Ct. 686.
Our decision in WIN v. Rippie followed a similar chain of reasoning. WIN challenged a Washington law that compelled the disclosure of petition circulators’ identities, addresses, and compensation before and after an election. WIN, 213 F.3d at 1134-35. These disclosures were “routinely filed during the circulation period,” which we said created a chilling effect on speech. Id. at 1138-39. Applying exacting scrutiny, we struck down the disclosure requirement. Id. at 1140. Central to our holding was our judgment that the “interest in educating voters through campaign finance disclosure is more adequately served by a panoply of the State’s other requirements that have not been challenged.” Id. at 1139. Like ACLF, WIN illustrates that, where alternative means of furthering the state’s interest are available, it will be very difficult for a compelled disclosure law to survive exacting scrutiny.
Heller remains our clearest articulation of the principles underlying McIntyre, ACLF, and WIN. In Heller, we invalidated a Nevada law that required “certain groups or entities publishing any material or information relating to an election, candidate or any question on a ballot to reveal on the publication the names and addresses of the publications’ financial sponsors.” 378 F.3d at 981 (internal quotation marks omitted). Our holding rested on “[t]he constitutionally determinative distinction between on-publication identity disclosure requirements and after-the-fact reporting requirements” that we said “has been noted and relied upon both by the Supreme Court and by this Circuit.” Id. at 991. We said ACLF stands for the following proposition: “[I]t is not just that a speaker’s identity is revealed, but how and when that identity is revealed, that matters in a First Amendment analysis of a state’s regulation of political speech.” Id. (emphasis added) (citing WIN, 213 F.3d at 1138). For that reason, “requiring a publisher to reveal her identity on her election-related communication is considerably more intrusive than simply requiring her to report to a government agency for later publication how she spent her money.” Id. at 992. Because the Nevada law required the speaker to disclose her identity on the face of the election-related communication, we held the state’s asserted interests were inadequate to justify the burden on speech. Id. at 1002.
In all of these precedents, the Supreme Court and this circuit have taken the view that “[t]he injury to speech is heightened” when speakers are compelled to disclose their identities “at the same time they deliver their political message.” ACLF, 525 U.S. at 199, 119 S.Ct. 636 (internal quotation marks omitted). Such is the case here, where the petition-proponent disclosure requirement forces official proponents to reveal their identities on the face of the petition. Forced disclosures of this kind are “significant encroachments on First Amendment rights.” Buckley, 424 U.S. at 64, 96 S.Ct. 612.
These precedents also make clear that, where there are alternative methods of meeting the government’s asserted interests, the government’s task of justifying a compelled disclosure law becomes much more onerous. See ACLF, 525 U.S. at 198-99, 119 S.Ct. 636; WIN, 213 F.3d at 1139. California contends that voters have an interest in knowing the identities of official proponents, but such identities are already disclosed on two occasions before *687 petition circulation can begin. Proponents must disclose their identities to the City Clerk when they file the notice of intent, and the Clerk must provide copies of the notice to “any person upon request.” Cal. Elec.Code §§ 9202(a), 9202.5[13]. Additionally, there is the publication requirement. Id. § 9205(a)-(b). Voters who wish to know the identities of official proponents need only make a trip to the City Clerk’s office or search for the publication of the petition in their newspapers of general circulation.
Like ACLF and McIntyre, the statutory scheme here “compels personal name identification at the precise moment when the [speaker’s] interest in anonymity is greatest.” ACLF, 525 U.S. at 199, 119 S.Ct. 636. Like Heller, the disclosure requirement in this case implicates the “constitutionally determinative distinction between on-publication identity disclosure requirements and [before-or-] after-the-fact reporting requirements.” 378 F.3d at 991. Like ACLF and WIN, there are alternative means of disclosure that are “responsive to the [public’s] concern” in knowing the identities of those involved in the initiative process. ACLF, 525 U.S. at 198, 119 S.Ct. 636. Under these circumstances, the informational interest does not bear a substantial relation to the petition-proponent disclosure requirement and fails exacting scrutiny.
California also asserts an interest in maintaining the integrity of the electoral process. Doe sustained a Washington disclosure law on the basis of a similar interest, see 561 U.S. at 197-98, 130 S.Ct. 2811, and we will assume that the same interest is sufficiently important for purposes of this case.
California provides no explanation for how its interest in the integrity of the electoral process relates to the petition-proponent disclosure requirement. It simply asserts the interest. The district court elaborated on the nature of this interest: “By requiring a proponent’s name to appear on the circulated copy of the ballot initiative, the local voters who consider the initiative may recognize whether the proponent qualifies as an elector.” The district court appeared to be saying that an anti-fraud interest underlay the petition-proponent disclosure requirement, an interest the Supreme Court found sufficiently important in Doe. Id.
If the state is concerned about fraudulent proponents, as the district court suspected, it can protect against that possibility using the unchallenged disclosure requirements. See Cal. Elec.Code §§ 9202, 9202(a), 9205(a)-(b). At each of these stages, elections officials or the interested public can verify proponents’ qualifications. In Doe, Washington demonstrated that the existence of measures other than the disclosure requirement at issue did not alleviate the possibility of fraud and voter error. See, e.g., 561 U.S. at 198, 130 S.Ct. 2811 (pointing out that “the secretary’s verification and canvassing will not catch all invalid signatures”). It is California’s burden to show that the alternative methods of satisfying its anti-fraud goal are insufficient. WIN, 213 F.3d at 1138-39. Not only has it failed to carry its burden; it has not even attempted to do so.
California claims that, as was the case with Washington in Doe, its “interest in preserving electoral integrity is not limited to combating fraud.” 561 U.S. at 198, 130 S.Ct. 2811. Rather, the interest “extends more generally to promoting transparency and accountability in the electoral *688 process.” Id. California has not shown how the petition-proponent disclosure requirement serves that interest or why the alternative disclosure requirements are inadequate, relying instead on the bare pronouncement of its interest. That is insufficient to satisfy exacting scrutiny. See WIN, 213 F.3d at 1138-39; Ctr. for Individual Freedom, Inc., 706 F.3d at 282; Minn. Citizens Concerned for Life, Inc., 692 F.3d at 877.
D
A few responses to the dissent are in order. The dissent acknowledges that Supreme Court and Ninth Circuit precedent is deeply skeptical of compelled disclosure requirements like the one challenged in this case, but it claims that these cases “d[o] not apply here.” Dissent at 700. The dissent seems to argue that official proponents, when acting in their official capacity, have no right to speak anonymously during the initiative process due to the public nature of their office and the legislative character of an initiative petition.[14] Id. Not a single precedent of this Court or of the Supreme Court has ever relied on such distinctions to sustain a compelled disclosure requirement, and the dissent does not cite any.[15]
More fundamentally, it is incoherent for the dissent to deny that official proponents have no right to speak anonymously while simultaneously applying a form of scrutiny designed to safeguard that very right. See Dissent at 697-98 (agreeing that exacting scrutiny applies). Compelled disclosure requirements are constitutionally suspect because the “decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.” McIntyre, 514 U.S. at 342, 115 S.Ct. 1511. But if the dissent denies that the right to remain anonymous is an aspect of official proponents’ freedom of speech, then the petition-proponent disclosure requirement is not a “regulation of the content of speech,” id. at 345, 115 S.Ct. 1511, and there is no reason to apply exacting scrutiny. See Doe, 561 U.S. at 219-21, 130 S.Ct. 2811 (Scalia, J., concurring in the judgment) (stating that the majority applied exacting scrutiny after finding that petition signatories have a right to anonymous political expression); Church of Am. Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 208-09 (2d Cir.2004) (declining to apply exacting scrutiny “[bjecause ... plaintiffs’ right to anonymous speech is not implicated here”). In short, the dissent agrees we must apply a level of scrutiny *689 that is only appropriate if official proponents have some right to speak anonymously, yet it denies that they have such a right. This confusion, we suggest, undermines the dissent's analysis.
The dissent's confusion is compounded by its failure to resolve the fundamental problem with California's argument: Even assuming that California has an important interest in forcing official proponents to disclose their identities, why must that disclosure occur on the face of initiative petitions? Kneebone and Breitfelder do not disagree that official proponents undertake duties and responsibilities that require disclosing proponents' identities to the public. After all, they do not challenge the notice-filing and publication requirements. They simply wish to remain anonymous at the point of contact with voters. The dissent never explains why a particular form of disclosure-the petition-proponent disclosure requirement-is substantially related to the state's interest when there are alternative, unchallenged means of disclosure.[16]
Instead, the dissent merely asserts that the unchallenged disclosure provisions would "fail to satisfy the government's interest in any meaningful or realistic sense." Dissent at 701. The dissent may very well think that, but Supreme Court precedent is to the contrary. Any voter who wants to know the identities of official proponents before signiiig a petition can find out by visiting the City Clerk's office or looking up the identities in the newspaper of general circulation, Cal. Elec.Code § 9202(a), § 9202.5, § 9205, a far more accessible means of gaining information than Colorado voters had available to them after ACLF. Moreover, in ACLF, it was far less convenient for Colorado voters to seek out the affidavits of petition circula-tors than it was to have the circulators wear identification badges, but the Court nonetheless invalidated the badge requirement. 525 U.s. at 198-200, 119 S.Ct. 636. Perhaps the dissent has an explanation for why Colorado voters should have to work harder than California voters when evaluating initiative petitions, but we cannot fathom what it might be.
The petition-proponent disclosure requirement does not satisfy exacting scrutiny
E
The petition-proponent disclosure requirement is unconstitutional. Unlike the challenge to the elector requirement, none of the parties assert that the petition-proponent disclosure requirement exists apart from the state elections code. Thus, §~ 9202 and 9207 of the California Elections Code are invalid to the extent that they require official initiative proponents to identify themselves on the face of initiative petitions.
V
We affirm the district court's grant of summary judgment to the defendants as to the elector requirement, but we reverse its grant of summary judgment to the defendants as to the petition-proponent disclosure requirement. We therefore reverse the district court's denial of summary judgment to the plaintiffs as to the petition-proponent disclosure requirement and remand so that it can enter an injunction *690 consistent with this opinion. The parties shall bear their own costs.
AFFIRMED in part, REVERSED in part, and REMANDED.

. Where no such newspaper exists for either the city or the county, the same information must be posted at three designated public places in the city. Cal. Elec.Code § 9205(b).

. Despite the successful qualification and passage of the initiative advocated by the plaintiffs, this case is not moot because it is "capable of repetition, yet evading review.” Fed. Election Comm’n v. Wis. Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007); see also Davis v. Fed. Election Comm’n, 554 U.S. 724, 735, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008).

. The mere fact that the Associations have to rely on proxies to participate in these activities is insufficient, by itself, to violate the Free Speech Clause. If serving as an official proponent is not part of the freedom of speech, then it does not matter, for First Amendment purposes, that the Associations must rely on proxies who can serve as official proponents. See Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 337-40, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).

. In determining whether the authority of official proponents is legislative in nature, our inquiry is two-fold: (1) what powers, duties, and responsibilities are delegated to official proponents, and (2) whether those powers, duties, and responsibilities are legislative in character for First Amendment purposes? California law, and the state courts’ interpretation of California law, is dispositive as to the first question, but the second question — • which determines whether the First Amendment is implicated by the elector requirement — is up to federal courts to decide.
Our two-step analysis is no different than what we do in myriad areas of constitutional law. See, e.g., Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) ("The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause. Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.” (internal quotation marks omitted)); see also Town of Castle Rock v. Gonzales, 545 U.S. 748, 756-57, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (same). This method of analysis is all the more important when federal courts seek to analyze the structure of state government, implicating bedrock principles of federalism and state sovereignty. See Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 71, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) ("Government ... is the science of experiment, and a State is afforded wide leeway when experimenting with the appropriate allocation of state legislative power.” (internal quotation marks and citation omitted)).

. Carrigan’s holding was limited to the First Amendment. 131 S.Ct. at 2350-51. We express no view here about whether the Associations’ alleged right might be protected under other provisions of the Federal Constitution.

. The concurrence claims that this manner of reconciling Carrigan and Doe departs from Supreme Court precedent, implying that its own approach is well-established in the U.S. Reports. See Concurrence at 45-48. Yet, other than the Supreme Court’s brief paragraph distinguishing Carrigan from Doe, see Carrigan, 131 S.Ct. at 2351, no federal court has described how Carrigan and Doe interact. Thus, any effort in this regard will break new ground, including that of the concurrence.

. The concurrence is, therefore, quite wrong when it asserts that Doe controls the elector requirement analysis. The key question with regard to the elector requirement is whether California’s decision not to delegate legislative authority to associations violates the freedom of speech. Doe has nothing to say about that question.

. This distinction between the legal authority to exercise legislative power and the exercise of such power explains why the dissent errs when it treats the challenges to the elector and petition-proponent disclosure requirements identically. See Dissent at 696. Only if we ignore Doe’s clear instruction, as the dissent would do, can we conclude that the legislative character of initiative petitions strips proponents of First Amendment protection.

. Because we conclude that the elector requirement is constitutional, there is no need to resolve the parties’ dispute over whether the requirement is located in the California Elections Code, the City Charter, or some other source.
The parties also dispute which standard of review applies to the elector requirement, but *682 because we conclude that such requirement does not implicate the First Amendment, we do not proceed to resolve that question. See Ala. State Fed’n of Labor v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945) ("It has long been [the Court’s] considered practice not to decide abstract, hypothetical or contingent questions, or to decide any constitutional question in advance of the necessity for its decision....” (internal citations omitted)).

. At least one of our sister circuits has implied that, in some circumstances, regulation of the content of initiative petitions would abridge the freedom of speech. Biddulph v. Mortham, 89 F.3d 1491, 1500 (11th Cir.1996) (per curiam) ("We obviously would be concerned about free speech and freedom-of-association rights were a state to enact initiative regulations that were content based or had a disparate impact on certain political viewpoints.”).

. Norris limits her briefing to the elector requirement. California acknowledges that "an initiative petition is political speech” and states that "[t]here is no doubt that the challenged statutes, which govern the content of *683 an initiative petition, trigger scrutiny under the First Amendment.”

. Kneebone and Breitfelder bring both as-applied and facial challenges to the petition-proponent disclosure requirement. The nature of their argument, however, is a facial challenge: They claim that the requirement violates the freedom of speech no matter the identities or circumstances of the official proponents. To be sure, Kneebone and Breitfelder have asserted that they, in particular, have reasons for desiring to remain anonymous when serving as official proponents, but their arguments, if correct, preclude the idea that the requirement has a "plainly legitimate sweep” or that "circumstances exist under which [it] would be valid.” United States v. Stevens, 559 U.S. 460, 472-73, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (internal quotation marks omitted). Because Kneebone and Breitfelder's "claim and the relief that would follow ... reach beyond the particular circumstances of these plaintiffs,” they must "satisfy our standards for a facial challenge to the extent of that reach.” Doe, 561 U.S. at 194, 130 S.Ct. 2811.

. Section 9202.5 was enacted by the California legislature in 2012 and took effect on January 1, 2013. See Cal. Elec.Code § 9202.5 (West 2013).

. The dissent also implies that, because it relies exclusively on California’s asserted interest in the integrity of the electoral process to sustain the petition-proponent disclosure requirement, the doctrine of McIntyre, ACLF, Heller, and WIN is inapplicable. Dissent at 700. But Doe applied the doctrine of those cases in evaluating the constitutionality of Washington's compelled disclosure law, even though Doe, like the dissent, relied exclusively on the interest in the integrity of the electoral process. 561 U.S. at 195-202, 130 S.Ct. 2811. The dissent cannot avoid the clear instructions of McIntyre, ACLF, Heller, and WIN merely by invoking the interest in electoral integrity.

. To the extent the dissent relies on the fact that an initiative petition is a legislative document, Doe forecloses such argument. The signatories in Doe, no less than the official proponents in this case, were introducing legislation; their signatures were necessary for the petition to qualify for the ballot. In that case, Washington raised precisely the same argument the dissent makes here; because signatories are engaging in a “legally operative legislative act,” they were not entitled to the same level of First Amendment protection as they would be in other contexts. Doe, 561 U.S. at 195, 130 S.Ct. 2811. The Supreme Court rejected that rationale. Id. at 195-96, 130 S.Ct. 2811.

. Significantly, California makes no effort to show why the petition-proponent disclosure requirement is needed given that the public can learn official proponents' identities through the notice-filing and publication requirements. Even if the dissent were able to articulate such a justification, the burden is on California-not members of this Court-to do so. WIN, 213 F.3d at 1138-39; Ctr. for Individual Freedom, Inc., 706 F.3d at 282; Minn. Citizens Concerned for Life, Inc., 692 F.3d at 877.